[No. B060126. Second Dist., Div. Six. May 12, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
RAMON WATKINS, Defendant and Appellant.

**COUNSEL**

Jonathan B. Steiner and Nancy S. Coan, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, John R. Gorey and Kenneth C. Byrne, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

YEGAN, J.—Ramon Watkins was convicted by jury of first degree burglary. (Pen. Code, §§ 459, 460.) He was sentenced to the upper term of six years

and appeals contending: "I. The trial court's erroneous denial of appellant's timely motion to represent himself requires reversal under the United States and California constitutions. II. The trial court erred in imposing the upper term by improperly considering certain factors as aggravating circumstances." We reject both contentions and affirm the judgment.

Viewed in accordance with the usual rules on appeal (*People* v. *Price* (1991) 1 Cal.4th 324, 462 [3 Cal.Rptr.2d 106, 821 P.2d 610]), the evidence established that Shawna Moore was in the bathroom of her residence when she heard a knock on the front door. Moore did not answer because she was ill. When she went into her bedroom a few minutes later, she saw appellant rummaging through clothing. Appellant said he was selling tools and asked if she wanted to buy some. He explained that, when no one answers the door, he enters in case someone is sick or unable to get up. Appellant gave a false name. When Moore told appellant she did not appreciate him entering her residence, appellant left. Moore called the police and, shortly thereafter, appellant was arrested. The police found Moore's Timex watch on appellant during a booking search.

Prior to trial, the trial court (Judge McNally) granted appellant's motion to relieve the public defender and substitute new counsel. The court did so relying on the public defender's representation that there had been an irremediable breakdown of the attorney/client relationship. (*People* v. *Williams* (1970) 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008]; *People* v. *Rhines* (1982) 131 Cal.App.3d 498, 505 [182 Cal.Rptr. 478].) As the court was appointing new counsel, appellant moved to represent himself because "I like to motion that the trial be moved from Ventura to another Coun— County because—because of a witness that may have emotional—emotional feeling towards the County, Sheriff's Department, and that have no bearing with the law, constitutional rights nor anything else."

The trial court pointed out that the first issue was whether appellant was competent to represent himself and questioned appellant regarding his ability to do so. Appellant told the court that he had finished high school. Appellant admitted that he had "a very, very strong speech impediment," that he had ". . . it 13 years, and I—think I dealt with it pretty well." At one point the court reporter interrupted proceedings to point out that he did not understand what appellant had just said. The court asked appellant if he was receiving treatment for his speech impediment and appellant said he "had a neurologist and also a speech therapist."

As the trial court tried to question appellant further regarding his ability to act as his own attorney, appellant went off on a tangent. He repeatedly

responded with comments about the motions he wished to present to the court. For instance, appellant said, "I would like to motion to have Melba Cook treat me, which I might have a broken nose from a seizure disorder." The court then stated, "I do now conclude from the evidence that Mr. Watkins, unfortunately, has an enormously difficult time speaking, to the point where I find as a fact that he would be clearly unable to represent himself as an attorney in his own behalf." Thereafter, appellant was represented by substitute counsel and, as indicated, convicted by the jury.

■ Appellant's contention that the trial court erred in denying his motion for self-representation is without merit. "In *Faretta* [*Faretta* v. *California* (1975) 422 U.S. 806 (45 L.Ed.2d 562, 95 S.Ct. 2525)], the Court considered the case of a criminal defendant who was required to present his defense exclusively through counsel. The Court held that an accused has a Sixth Amendment right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel *and that he is able and willing to abide by rules of procedure and courtroom protocol.*" (*McKaskle* v. *Wiggins* (1984) 465 U.S. 168, 173 [79 L.Ed.2d 122, 130, 104 S.Ct. 944], italics added.)

In *Savage* v. *Estelle* (9th Cir. 1990) 924 F.2d 1459, the Ninth Circuit Court of Appeals held that a defendant who did not wish to merely stand mute and put the People to their proof, and whose severe speech impediment made him unable to communicate effectively with the jury, was unable to abide by rules of procedure and courtroom protocol and thus did not have the right to be self-represented.

In doing so, the *Savage* court stressed that "[c]ommunicating with the factfinder (here, a jury) is the essence of a trial. ■ In our adversarial system of criminal justice, it is essential that those representing the parties be able to examine witnesses and to argue to the jury . . . ." (924 F.2d at p. 1464.) We observe that it is equally essential for a self-represented defendant to be able to communicate with the trial judge concerning, for example, evidentiary matters, instructions, and motions.

Other courts have reached similar conclusions. For example, a defendant who asks to represent himself must have ". . . basic cognitive and communicative skills relating to the presentation of a defense to criminal charges . . . [including the ability to] coherently communicate . . . to the trier of fact. . . ." (*People* v. *Burnett* (1987) 188 Cal.App.3d 1314, 1327 [234 Cal.Rptr. 67]; see also *People* v. *Manago* (1990) 220 Cal.App.3d 982, 985-988 [269 Cal.Rptr. 819].)

■ Here, it was immediately apparent to the trial court that appellant's speech impediment was so severe that he could not communicate, thus

eviscerating ". . . the essence of a trial." (*Savage* v. *Estelle supra*, 924 F.2d at p. 1464.) The trial court's finding was not based upon a lack of eloquence or because appellant had a "soft voice." (Compare *People* v. *Hamilton* (1985) 41 Cal.3d 408, 420-421 [221 Cal.Rptr. 902, 710 P.2d 981], vacated on other grounds in *California* v. *Hamilton,* 478 U.S. 1017 [92 L.Ed.2d 734, 106 S.Ct. 3328], new opn. *People* v. *Hamilton* (1988) 45 Cal.3d 351, 363 [247 Cal.Rptr. 31, 753 P.2d 1109].) The cold record does indicate that the court reporter was able to produce a record of what appellant said at the hearing on the motion for self-representation. It does not and cannot demonstrate the difficulty in doing so. In one instance the court reporter mentioned to the court that it could not understand appellant.

Here the trial court made an express factual finding that appellant's severe speech impediment was such that he ". . . would be clearly unable to represent himself. . . ." ■ The trial court's findings, express or implied, will be upheld on appeal if supported by substantial evidence, and all intendments are in favor of the trial court's ruling. (*People* v. *Superior Court* (*Ramos*) (1991) 235 Cal.App.3d 1261, 1266, fn. 2 [1 Cal.Rptr.2d 333]; *People* v. *Taylor* (1984) 162 Cal.App.3d 720, 724 [208 Cal.Rptr. 708].) ■ Here, substantial evidence supports the trial court's finding.

We hold that a criminal defendant with a speech impediment so severe that it renders him unable to communicate with the judge and jury is unable to abide by rules of procedure and courtroom protocol. Such defendant may not exercise the constitutional right of self-representation.

■ As a subsidiary argument, appellant claims that notwithstanding the trial court's finding, it should have granted the motion and sua sponte appointed cocounsel. ■ Appellant never suggested this procedure or theory to the trial court and is precluded from doing so for the first time on appeal. (E.g., *People* v. *Witt* (1975) 53 Cal.App.3d 154, 174 [125 Cal.Rptr. 653].) ■ We are unaware of any authority compelling the trial court to sua sponte inquire as to this alternative. That cocounsel was appointed to assist in *Savage* v. *Estelle, supra,* 924 F.2d 1459, is inapposite. ■ " 'Cases are not authority for questions not presented or considered. [Citation.]' " (*People* v. *Nealy* (1991) 228 Cal.App.3d 447, 452 [279 Cal.Rptr. 36].) ■ There is no constitutional right to the appointment of cocounsel. (*People* v. *Bloom* (1989) 48 Cal.3d 1194, 1218 [259 Cal.Rptr. 669, 774 P.2d 698]; *People* v. *Wheeler* (1977) 68 Cal.App.3d 1056, 1059 [137 Cal.Rptr. 791].)

■ At sentencing, the trial court (Judge McGrath) stated that it had read and considered the probation report. The report included information regarding appellant's prior conviction for burglary of a market in Mississippi and

his two prior arrests for shoplifting and possession of drugs which did not result in convictions. It listed, as factors in aggravation, the vulnerability of the victim, appellant's prior prison term for burglary, a prior revocation of probation, and appellant's use of different names and birth dates to avoid detection. It listed no factors in mitigation. The trial court denied appellant's motion to strike from the probation report prior arrests which had not resulted in convictions, but stated, "I'm not giving them any weight, treating them as convictions or enhancing the sentence in any way or the punishment in any way because of these." In denying appellant's motion to strike the vulnerability of the victim as a factor in aggravation, the court said, "Well, it's a little bit more than a residential burglary. This is a hot-prowl burglary, which has an extremely dangerous potential for the victim and the defendant." The trial court agreed with defense counsel that the lack of harm to the victim and the small value of the property taken were factors in mitigation. In response to defense counsel's argument for the lower term, the prosecutor responded, "If anything, People's position is this is a midterm, giving the defendant every opportunity of a break here."

The trial court then stated that the "circumstances in aggravation are vulnerability of the victim being alone at home at the time he entered the residence, his prior record, including a prior [commercial] burglary conviction. . . . He did serve a prior prison term for that burglary offense. . . . And the fact that he's evading prosecution by giving different names and [dates of birth] are all . . . circumstances in aggravation." Finding the factors in aggravation "substantially" outweighed those in mitigation, the court imposed the upper term and then stated, "[a]nother reason for imposing the aggravated, People could have alleged and enhanced sentence by this prison prior and elected not to [do so]." Defense counsel then argued that the fact that "the People could have alleged the prior prison—prior conviction as an enhancement allegation . . . . should not be [used] . . . as a reason to give the aggravated term[,]" and contended that the prior conviction was constitutionally infirm. The trial court responded, "I agree. . . . The Court strikes as a circumstance in aggravation the prior. I still feel that it's an aggravated term, however. . . ."

Appellant's contention that remand is required because the trial court used improper factors in imposing the upper term is without merit. The trial court stated that it was not using appellant's arrests or prior conviction as aggravating factors. However, the exclusion of these factors did not preclude the court from considering appellant's prior violation of probation. In addition, the victim was particularly vulnerable because she was sick and alone in her home. Moreover, appellant's use of false names and dates of birth indicated sophistication and professionalism in seeking to avoid prosecution. These

factors justified the imposition of the upper term. "Even if the record could be read as appellant suggests, remand is not here appropriate and would result in exaltation of form over substance. [Citation.] . . . It is not reasonably probable that a result more favorable to appellant would be reached, and there was no miscarriage of justice. [Citations.]" (*People* v. *Bravot* (1986) 183 Cal.App.3d 93, 98 [227 Cal.Rptr. 810].)

The judgment is affirmed.

Stone (S. J.), P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied May 29, 1992, and appellant's petition for review by the Supreme Court was denied July 30, 1992. Kennard, J., and George, J., were of the opinion that the petition should be granted.