[No. B050905. Second Dist., Div. Four. Sept. 17, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVE JEROME WHITE, Defendant and Appellant.

## COUNSEL

Alys Briggs, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Marc E. Turchin and Juliet H. Swoboda, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (A. M.), P. J.**—Defendant was convicted by a jury of first degree murder (Pen. Code, § 187, subd. (a)) and second degree robbery (Pen. Code, §§ 211 and 212.5, subd. (b)).[1] The jury found true the allegation that the murder was committed in the commission of a robbery. Defendant was sentenced to life in state prison without possibility of parole pursuant to section 190.2, subdivision (a)(17). Additionally, the jury found that defendant personally used a firearm in the commission of each offense and, pursuant to section 12022.5, he was sentenced to an additional two years.

Defendant contends that the judgment against him must be reversed because (1) the trial court erred in denying his motion for self-representation; and (2) the prosecutor improperly commented upon the fact that defendant did not testify in his own behalf.

No discussion of the facts concerning the offense is required by the issues defendant raises. The following procedural history is, however, relevant.

On March 24, 1988, defendant was represented by the public defender at his preliminary hearing.

On May 19, 1988, an information charging defendant with the crimes for which he was convicted was filed, to which defendant pled not guilty. The prosecution initially sought the death penalty.

---

[1]Hereinafter, all statutory references are to the Penal Code unless otherwise indicated.

On July 18, 1988, defendant's public defender was relieved and new counsel was appointed pursuant to section 987.2. The matter was set for a pretrial conference on July 19, 1988, and then continued to August 12, 1988.[2]

On August 12, 1988, codefense counsel was appointed pursuant to section 987, subdivision (d). The case was eventually continued to December 13, 1988. On that date, trial was set for January 25, 1989, at defendant's request. Neither defendant nor the People had announced ready. The trial date was subsequently vacated and the case continued to April 21, 1989, for a pretrial and trial setting conference and then to June 9, 1989.

On June 9, 1989, following an ex parte hearing, the court denied defendant's *Marsden* motion to substitute counsel.[3] The matter was put over to July 28, 1989. Defendant then filed a motion to dismiss pursuant to section 995. On July 28, 1989, after the court denied his motion, he renewed his *Marsden* motion. That motion was again denied. The defendant immediately thereafter asserted his right of self-representation.[4] The court asked defendant to submit his request in writing at the hearing on defendant's motion to

---

[2]Unless otherwise noted, the record does not indicate whether a continuance was granted at the request of defendant or at the request of the People.

[3]*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

[4]Defendant's assertion that no such motion was made prior to August 25, 1989, and that the portion of the proceedings in which such a motion was made were not reported, is inaccurate. The following colloquy occurred on July 28, 1989:

"THE DEFENDANT: Do I have a right to go pro per now, Your Honor?

"THE COURT: Do you have a right to get yourself a place up on death row? [¶] That's basically what your asking me. [¶] Well, it's an interesting point. There is a lot of new law on this particular issue. [¶] Are you specifically requesting that you represent yourself on a death penalty case?

"THE DEFENDANT: Since the court leaves me no choice, yes, sir.

"THE COURT: Don't get me in a position where I'm leaving you no choice. That's a decision you're going to make. [¶] . . . And you want to represent yourself? [¶] Is that what you're telling me?

"THE DEFENDANT: I'm asking the court to remove these two attorneys that I have. [¶] Since the court chooses not to do that, it leaves no other choice that I have.

"THE COURT: I have no legal reason to do that [remove defense counsel].

. " . . . . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: Mr. White, at that time [the August 24, 1989, hearing on defendant's motion to suppress] if you wish to act as your own attorney, you may make that request. [¶] I would request it be in a written format. That being the request to act as your own attorney. [¶] Just set forth in that motion your background, to wit, your educational background, your knowledge of the law and—. . . [¶] Okay. We will give you a copy of the [in propria persona status] questionnaire. [¶] Please fill that out and present that with your motion. [¶] Understand?

"THE DEFENDANT: Yes, sir. [¶] So in other words, I would have to have a motion on the 24th then?

"THE COURT: Well, I haven't ruled upon your motion to go in propria persona. [¶] Okay. The 24th."

suppress evidence pursuant to section 1538.5 scheduled for August 24, 1989. (See fn. 4, *ante.*)

On August 25, 1989, the court denied defendant's motion to suppress. The court then expressed its intention to set the matter for trial. Defense counsel raised the issue of defendant's motion to represent himself.[5]

The court inferred from defendant's failure to submit a written request to proceed in propria persona, or to complete the questionnaire, although he had been instructed to do so, that defendant had withdrawn his request. (See fn. 5, *ante.*) Defendant did not challenge this conclusion.[6] The matter was thereafter set for trial on October 31, 1989. Subsequently, this trial date was vacated and the case continued for trial setting to November 1, 1989.

On November 1, 1989, the court suggested a trial date of November 28, 1989, and advised counsel of the possibility that the case might trail to December 4, 1989. Defense counsel responded: "We could set it on the 28th, if the court wishes to. . . . As long as the court is aware the court is setting

---

[5]"MR. BARNES [Defense counsel]: I suppose the court should resolve the lingering issue regarding the defendant's request to go pro per.

"THE COURT: Are you making that request?

"THE DEFENDANT: Now, you ask. Why didn't you ask before the hearing? You know, it was never brought up before the hearing.

"THE COURT: Okay. His response is before the court which is no response. [¶] Now, when are we setting this for trial?"

Following discussion of several other matters, the district attorney again introduced the subject of defendant's request to proceed in propria persona:

"MR. CAMPBELL [deputy district attorney]: I have a procedural point and that is that I believe at the last hearing date, Mr. White [the defendant] asked at great length about going pro per.

"THE COURT: If you remember, I said that there were certain requirements. He has not fulfilled those requirements. So that motion is not before me. And I just specifically asked him about that, and he didn't respond. That is not before me. . . .

"MR. CAMPBELL: The only reason I was raising that is so that it does not become an issue.

"THE COURT: Do you have any objection to October the 31st [for trial]?

"MR. CAMPBELL: No.

"THE COURT: Is that agreeable with you, Mr. White?

[Defendant conferred with his counsel.]

"THE COURT: Mr. White?

"THE DEFENDANT: It's okay."

[6]Defendant does not contend that the court erred in requiring that he submit a written request to proceed in propria persona or that he complete the questionnaire. (But see *People v. Truman* (1992) 6 Cal.App.4th 1816, 1822 [9 Cal.Rptr.2d 138] [defendant's request to represent himself granted despite his repeated refusal to complete a "*Faretta* Waiver" form].) Now, defendant challenges the court's inference that the motion was withdrawn based upon defendant's failure to comply with the court's requirements. This challenge is without merit. At the trial setting conference on November 1, 1989, defendant's trial counsel conceded that defendant withdrew his July 28, 1989, request to proceed in propria persona.

this date and *I am not announcing ready. . . .* [¶] I have second counsel who will not be available to deal with that."[7] Later at the hearing, defense counsel reiterated this point:

"MR. BARNES: *I just want to make it clear on the record at this point in time that I have not announced ready.*

"THE COURT: I understand.

"MR. BARNES: . . . *And as far as I am concerned, I am not announcing that I will be ready for trial on February* [*sic*] 28th. [¶] This is a capital case at the present time, and there are serious matters that require further investigation on it. And that it's fair to say that in some sense, the ball has been dropped in that some of these things weren't investigated earlier. That the fact that it's being done now is in no way an attempt to further delay the proceedings, but rather an attempt to make sure all our client's rights are protected, and that the truth will come out at trial.

"THE COURT: Your point is clear. There has never been any doubt in my mind. . . ." (Italics added.)

Concerning defense cocounsel's apparent calendar conflict with the proposed trial date, the court stated: "If you [defense lead counsel] . . . wish to have another counsel appointed to assist you, that should be done the first available time so that lawyer can have sufficient time to prepare."

The court then set the matter for trial on November 28, 1989. Defendant immediately thereafter moved to proceed in propria persona:

"THE DEFENDANT: Excuse me, Your Honor. [¶] I would like to go pro per at this time. And here's your motion that you asked me for the last time.

---

[7]With respect to defense cocounsel's conflict with a trial date of November 28, 1989, the court made the following comments:

"THE COURT: . . . We're going to set the trial date on the 28th. [¶] If Mr. Barnes wants to come in, since he is the lead counsel, so to speak, if he wants to have Miss Richland, fine. If he needs further assistance, then I have a couple of lawyers in mind that have indicated that they can be of help. . . . But I'm willing to do that, but not to delay the case for February or March of next year, which is what Miss Richland and her other case would necessitate.

"MR. CAMPBELL: Judge, my only concern and the reason I ask this is if we wait until the 28th, I anticipate Mr. Barnes will express to you on the 28th whatever the problems are that could be resolved on the 15th. [¶] He will indicate he needs another counsel or whatever the issue needs to be resolved. It will just be delayed two weeks.

"THE COURT: Mr. Campbell, maybe I didn't make myself clear. [¶] *If he wants that, he is going to have to do it far before the 28th because on the 28th that will not be good cause to put the matter over, unless he requests new counsel, and unless they come in at that point and say that they need some additional time, good cause will be shown.*" (Italics added.)

"THE COURT: Okay. We'll pass this. I'm sorry. We'll pass this for the moment.

"MR. BARNES: Your Honor, may I—

"THE COURT: We sat here and did all this and you bring it up at this particular time. [¶] All right. We'll pass it for the moment."

After hearing unrelated matters, the court returned to defendant's request to represent himself:

"THE COURT: All right. We're back on the Steve White matter. [¶] Mr. White has submitted a request to proceed in propria persona. [¶] Mr. White, assuming that I were to allow you to act as your own attorney, when would you be ready for trial?

"THE DEFENDANT: It depends on when I get to the law library or what I learn.

"THE COURT: Well, I've set the trial date before you got around to giving me this motion on the 28th of November. [¶] I said that was going to be a trial date.

"THE DEFENDANT: Well, I couldn't possibly be ready for the 28th of November.

"THE COURT: You could or could not?

"THE DEFENDANT: I could not, Your Honor.

"MR. BARNES: Your Honor, I join on Mr. White's behalf. [¶] I would indicate to the court that it's a trial for his life, and he is very concerned about his case, as well he should be. [¶] He did request pro per privileges in July. The court put off a decision on that. And ultimately, that request was withdrawn. And I do not think that what he's doing today is a delaying tactic. I think it's rather out of his own concern for his case and to be sure that in his own mind and to be comfortable in his own mind that the case is prepared and ready to go to trial, and that he has all the legal avenues available to him in his own representation.

"THE COURT: Well, in fact, that always gives me concern. [¶] Number one, Mr. Barnes tells you [sic] that you're concerned because you're on trial for your life. And then you're telling me that you want to act as your own attorney. [¶] Do you think you're as good as Mr. Barnes?

"THE DEFENDANT: NO."

After it inquired into defendant's technical legal knowledge, the court stated:

"THE COURT: . . . I just can't understand why you, at least through your attorney, represent that you're interested obviously because you're on trial for your life. Yet, you want to act as your own attorney, and you don't know the first thing about trying a case.

". . . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: . . . I can't understand why you think you can do a better job than Mr. Barnes can do. [¶] I mean, he has tried these types of cases before. He has had an investigator appointed on this particular case or these types of cases. He has a vast amount of experience of trying every type of case. He's tried cases in front of me, and he's one of the best that has ever tried a case in front of me. And you want to get rid of him and try the case not even knowing the first elementary aspect of trying a capital case? [¶] That leaves me with a great deal of problems. I don't understand what you are asking for.

". . . . . . . . . . . . . . . . . . . . . . . . .

"THE DEFENDANT: Now, I had asked to go pro per before now. You tell me that if my other counsel is not ready, you're going to fire that counsel that you told me was good at the time when I tried to get rid of her. Now, that doesn't make no sense to me either.

"THE COURT: Well, if you stop and think about what you just said, it's very clear. I'm not saying that the attorney isn't any good. I am saying that she is engaged in another capital case which is going to last far into next year, which means she can't be in two places at one time. So I'm going to appoint, if Mr. Barnes requests it, another well-qualified, outstanding lawyer to assist him because he's lead counsel in this particular trial. . . .

"THE DEFENDANT: But what you do is give someone else thirty days and then try a death penalty case in thirty days. I don't understand that. [¶] So it seems to me that you are in more of a rush because everybody else—

"THE COURT: A rush, Mr. White? Do you know how long this case has been around? You've been around here for a long enough time.

". . . . . . . . . . . . . . . . . . . . . . . . .

"THE DEFENDANT: You see, there are things that need to be done. You know, I mean I have to do my research. I have to know what's going on. Nobody tells me. So I have to know. And anything I don't know, I'm going to question.

"THE COURT: Well, let's get down to what to me seems very apparent that may not seem to you. [¶] You want to give up good counsel who can at least spot these particular issues and go to trial when you don't know the first elementary aspects of trying a case. [¶] I have yet to see in my experience a pro per win a case.

"THE DEFENDANT: But then I mean—

"THE COURT: In fact, I've seen some that should have won that jurors have come back very quickly on with guilty verdicts because the defendant through his own wish and his absolute right had tried a case so poorly and couldn't present an appropriate defense that they were convicted with evidence which if presented by a lawyer and witnesses examined by an experienced lawyer, they might very well have been acquitted.

"THE DEFENDANT: But see—

"THE COURT: That's a decision that you get to make.

"THE DEFENDANT: But see, the court may not be aware that I'm already doing 100 years, and the same thing was told to me that you just said and that same lawyer got me 100 years. I could have got—

"THE COURT: That's true. That may very well be true.

"THE COURT: . . . Lawyers can only do their very best with what they have to work with. If they don't have all the evidence to work with, they can't make it up.

"THE DEFENDANT: But then—so in other words—but you're not giving them the time to get it. So if you are not going to give them the time to get it, I mean, if anything is going to happen, I'll let it happen to me then.

"THE COURT: How soon will you be ready for trial?

"THE DEFENDANT: I can't answer that. I haven't begun to look through the material yet.

"THE COURT: What material do you want to look through?

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"MR. BARNES: Your Honor, I will naturally make available to Mr. White all of my materials if the court grants the motion. I will give him everything that I have concerning the case and everything that's been turned over to me by the District Attorney's Office, and Ms. Richland will do the same. And I know that he hasn't had access to all these materials.

"THE COURT: I understand. All right. At this time the request to be granted pro per status will be denied based upon the fact that the defendant cannot be ready in a timely fashion. That he has made this motion and withdrawn it in the past. So it appears that it's not a concrete motion. He's trying to get something which he's not necessarily entitled to get."

Defendant contends that he unequivocally asserted his constitutional right of self-representation on November 1, 1989, and that the court erroneously denied his timely motion to proceed in propria persona. We agree.

In *Faretta* v. *California* (1975) 422 U.S. 806, 836 [45 L.Ed.2d 562, 582, 95 S.Ct. 2525], the United States Supreme Court held that a defendant in a state criminal trial has a federal constitutional right to represent himself without counsel if he voluntarily and intelligently elects to do so. (*People* v. *Windham* (1977) 19 Cal.3d 121, 124 [137 Cal.Rptr. 8, 560 P.2d 1187].) The high court's decision in *Faretta* left open the question of at what point during pending criminal proceedings must the constitutional right of self-represen-tation be asserted if it is to be exercised. (*People* v. *Windham, supra*, 19 Cal.3d at p. 126.) In addressing the issue of whether a criminal defendant had properly invoked his constitutional right to self-representation by bring-ing a motion for self-representation mid-trial, the California Supreme Court in *Windham* resolved in part this question: "In order to invoke an uncondi-tional right of self-representation, the defendant must assert the right 'within a reasonable time prior to the commencement of trial.' (*People* v. *Windham* (1977) 19 Cal.3d 121, 128 . . . .) A motion made after this period is addressed to the sound discretion of the trial court. (*People* v. *Windham, supra*, 19 Cal.3d at p. 128 . . . .)" (*People* v. *Burton* (1989) 48 Cal.3d 843, 852 [258 Cal.Rptr. 184, 771 P.2d 1270].) *Windham* left unresolved the calculation of " 'a reasonable time prior to the commencement of trial.' " (*Ibid.*)

The first step towards resolution of defendant's contention that the court erred in denying his motion to proceed pro se is a determination of whether defendant's motion was made a reasonable time prior to the commence-ment of trial. (*People* v. *Hernandez* (1985) 163 Cal.App.3d 645, 654 [209

Cal.Rptr. 809].) If it was, the trial court was without discretion to deny the motion. (*People* v. *Joseph* (1983) 34 Cal.3d 936, 943 [196 Cal.Rptr. 339, 671 P.2d 843].) If defendant's motion was not timely interposed, its determination was within the trial court's sound discretion, upon consideration of the factors set forth in *People* v. *Windham, supra,* 19 Cal.3d at page 128, and *People* v. *Burton, supra,* 48 Cal.3d 843, 853. (*People* v. *Frierson* (1991) 53 Cal.3d 730, 742 [280 Cal.Rptr. 440, 808 P.2d 1197].)

The determination of whether a trial court has properly exercised its discretion in ruling on an *untimely Faretta* motion is "based on the ' "facts as they appear at the time of the hearing on the motion rather than on what subsequently develops." ' [Citations [and fn.] omitted.]" (*People* v. *Moore* (1988) 47 Cal.3d 63, 80 [252 Cal.Rptr. 494, 762 P.2d 1218].) We see no reason to apply a different standard in determining whether such a motion was *timely.* We therefore consider whether defendant's *Faretta* motion was timely within the procedural context of the case on November 1, 1989; without regard to the fact that trial did not ultimately commence until January 29, 1990. It is also irrelevant that the motion was heard after trial had been continued, since it preceded the actual commencement of trial. (See *People* v. *Wilks* (1978) 21 Cal.3d 460, 468 [146 Cal.Rptr. 364, 578 P.2d 1369].)

In determining the timeliness of a *Faretta* motion, "the California Supreme Court in the *Windham* case did not speak specifically to two, or three or more days before trial or give some Pythagorean 'secret magic of numbers.' [Fn. omitted.]"[8] (*People* v. *Ruiz* (1983) 142 Cal.App.3d 780, 790-791 [191 Cal.Rptr. 249].) However, the court admonished: "Our imposition of a 'reasonable time' requirement should not be and, indeed, must not be used as a means of limiting a defendant's *constitutional* right of self-representation. We intend only that a defendant should not be allowed to misuse the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice. For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request. In such a case the motion for self-representation is addressed to the sound discretion of the trial court . . . ." (*People* v. *Windham, supra,* 19 Cal.3d at p. 128, fn. 5, italics in original.) However, even a *Faretta* motion made on the day of trial is not untimely per se. (*People* v. *Herrera* (1980)

---

[8]Defendant's contention that his request was timely "as a matter of law" because it was made before the jury was impaneled is without merit. Although this is the federal rule, in *People* v. *Burton, supra,* 48 Cal.3d 843, 854, the California Supreme Court rejected the federal rule as "too rigid."

104 Cal.App.3d 167, 174 [163 Cal.Rptr. 435] [*Faretta* motion made on the morning of trial not untimely where made at earliest opportunity]; see also *People* v. *Hernandez, supra,* 163 Cal.App.3d 645, 651.)

"Most of the published California cases discussing the timeliness require-ment concern situations in which no unequivocal motion for self-represen-tation was made until the beginning or middle of trial.[9]" (*People* v. *Ruiz, supra,* 142 Cal.App.3d 780, 790 [defendant's *Faretta* motion made six days before trial was scheduled to commence found untimely where both defense counsel and prosecution counsel were ready to proceed with trial and "a serious witness problem" faced the court].)[10] Although it found "no case holding that a motion for self-representation presented six days or three days before trial is untimely," the court in *Ruiz* held that, "under the circum-stances surrounding appellant's request, the motion was made within that period of time contemplated by *Windham* in which the trial court may exercise its sound discretion in considering whether to grant or deny the motion." (*People* v. *Ruiz, supra,* 142 Cal.App.3d at pp. 790-791.)

The present case is distinguishable from *People* v. *Ruiz* in that, at the time defendant invoked his right to self-representation, trial was scheduled to commence in four weeks, not six days, and in any event, defense counsel had not yet announced ready. Moreover, cocounsel had been appointed and the court expressly recognized the possibility that, because of calendar conflicts, she might have to be replaced, thus providing good cause to continue the case. (See fn. 7, *ante.*) Furthermore, unlike in *Ruiz,* there is no contention here that defendant threatened any witness, or that the witnesses were otherwise fearful or reluctant to testify. Thus, no "serious witness problem" faced the court.

Our research has disclosed just one case that discusses a fact situation similar to the one presented here, where a motion for self-representation was

---

[9]In footnote 5 of the quoted passage, the court listed the following examples: "(See *People* v. *Windham, supra,* 19 Cal.3d 121 [third day of testimony]; *People* v. *Harris* (1977) 73 Cal.App.3d 76 . . . [after jury selection began]; *People* v. *Potter* [(1978)] 77 Cal.App.3d 45 [143 Cal.Rptr. 379] [beginning of trial; also, equivocal assertion]; *People* v. *Lindsey* (1978) 84 Cal.App.3d 851, 860-861 . . . [held withdrawn; also untimely after first day of testimony]; *People* v. *Hall* [(1978)] 87 Cal.App.3d 125, 131 [150 Cal.Rptr. 628] ['last possible moment before trial began,' immediately prior to jury selection]; *People* v. *Morgan* [(1980)] 101 Cal.App.3d 523 [161 Cal.Rptr. 664] [same as *Hall*]; *People* v. *Kaiser* (1980) 113 Cal.App.3d 754, 761-762 . . . [after two days of trial, jury impaneled and opening statements made]; *People* v. *Lopez* [(1981)] 116 Cal.App.3d 882 [172 Cal.Rptr. 374] [after beginning of trial; also, equivocal and 'playing games'].)."

[10]The trial court in *Ruiz* "relied upon the People's argument that the delay necessitated by appellant's request for continuance [to prepare to represent himself] would disrupt the proceedings and prejudice the People's case because of fearful and reluctant witnesses, at least one of whom appellant allegedly had threatened to kill." (*People* v. *Ruiz, supra,* 142 Cal.App.3d at p. 792.)

made several weeks before trial was scheduled to begin. In *People* v. *Freeman* (1977) 76 Cal.App.3d 302 [142 Cal.Rptr. 806], at the time of the October 15, 1975, hearing on the defendant's *Faretta* motion, his trial was scheduled to commence on November 24, 1975. In fact, the trial did not commence until April 30, 1976. (*People* v. *Freeman, supra*, 76 Cal.App.3d at p. 306, fn. 1.) The trial court denied the motion "on the grounds of defendant's lack of knowledge of the rules of evidence and procedure." (*People* v. *Freeman, supra*, 76 Cal.App.3d at p. 307.) The reviewing court found that "defendant's motion was asserted '. . . [well] within a reasonable time prior to the commencement of trial' ([*People* v. *Windham, supra*, 19 Cal.3d] at p. 128), at which time the *Faretta* rule applied. [Citation.]" (*People* v. *Freeman, supra*, 76 Cal.App.3d at p. 307.) The court reversed the judgment of conviction and remanded the cause with instructions to the trial court to "reconsider said motion solely to determine whether defendant's choice is freely and intelligently made." (*People* v. *Freeman, supra*, 76 Cal.App.3d at p. 313.) We believe that the present case is analogous to *People* v. *Freeman.*

The People rely exclusively on *People* v. *Frierson, supra*, 53 Cal.3d 730, for the proposition that defendant's motion was not timely. In *Frierson*, the defendant's murder trial was set to commence on September 29, 1986. On September 26, 1986, the trial was trailed to October 1, 1986. On September 29, 1986, the defendant asked to represent himself. The court held: "Defendant's *Faretta* motion on the eve of trial over 10 months after counsel had been appointed was not made within a ' "reasonable time prior to the commencement of trial." ' (*Burton, supra*, 48 Cal.3d at p. 852.)" (*People* v. *Frierson, supra*, 53 Cal.3d at p. 742.)

The People's reliance on *Frierson* is misplaced. The present case is factually distinguishable from *Frierson* in that at the time of defendant's *Faretta* motion herein, trial was scheduled to commence in four weeks, not four days, and defense counsel had not yet announced ready for trial; additionally, a continuance was expressly contemplated by the court in the event defense cocounsel had to be replaced due to a calendar conflict. (See fn. 7, *ante.*)

For these reasons, the present case is also factually distinguishable from *People* v. *Burton, supra*, 48 Cal.3d 843. In *Burton*, "Defendant did not invoke his right to self-representation until after the case had been called for trial, both counsel had answered ready, and the case had been transferred to a trial department for pretrial motions and jury trial. . . . Under the circumstances, the motion was clearly directed to the sound discretion of the trial court. (See *People* v. *Hamilton* [(1985)] 41 Cal.3d 408, 419-421 [221 Cal.Rptr. 902,

710 P.2d 981] [motion made during pretrial motion to suppress and again during jury selection];[11] *People* v. *Ruiz [supra]* 142 Cal.App.3d 780, 790-792 . . . [motion made three days before trial]; *People* v. *Morgan* (1980) 101 Cal.App.3d 523, 531 . . . [motion made just before jury selection]; *People* v. *Hall* (1978) 87 Cal.App.3d 125, 132-133 . . . [same].)" (*People* v. *Burton, supra*, 48 Cal.3d at p. 853; see also *People* v. *Moore, supra*, 47 Cal.3d 63 [motion made on the same day trial was to begin was untimely]; *People* v. *Givan* (1992) 4 Cal.App.4th 1107 [6 Cal.Rptr.2d 339] [*Faretta* motion not timely where made after guilty verdict but prior to trial on priors]; *People* v. *Hardy* (1992) 2 Cal.4th 86 [5 Cal.Rptr.2d 796, 825 P.2d 781] [*Faretta* motion not timely where made during guilt phase].)

The present case is also distinguishable from *People* v. *Williams* (1990) 220 Cal.App.3d 1165 [269 Cal.Rptr. 705]. In *People* v. *Williams*, the defendant was granted in propria persona status on June 16, 1987. Four months later, the matter was sent out for trial but was continued for the appointment of counsel. Three months later, on January 20, 1988, defendant's trial counsel was relieved for medical reasons and new counsel was appointed. At some time between January 20, 1988, and February 8, 1988, when jury selection began (a period of 19 days), defendant made a *Marsden* motion, which motion the court denied, followed by a *Faretta* motion, which motion the court also denied on the grounds that it was untimely. On February 5, 1988, the court denied another *Marsden* motion by defendant. Upon denial of his second *Marsden* motion, the defendant stated that he was drafting a civil suit for legal malpractice against his trial counsel. Deeming this comment to be another *Faretta* motion, the trial court denied the motion as untimely. (*People* v. *Williams, supra*, 220 Cal.App.3d at pp. 1169-1170.) The reviewing court found that defendant "never made a timely and unequivocal request to represent himself after abandoning propria persona status when the case was sent out for trial. He was playing 'the *Faretta* game': 'His request was at best equivocal and hardly an unqualified waiver since he only wanted to represent himself if the court would not give him another attorney. As we indicated, it was pretty obvious that this defendant was simply playing games with the court . . . .' [Citation omitted.]" (*People* v. *Williams, supra*, 220 Cal.App.3d at p. 1170.)

In the present case, defendant had not previously obtained and then abandoned in propria persona status and his motion was not conditioned

---

[11]In *California* v. *Hamilton* (1986) 478 U.S. 1017 [92 L.Ed.2d 734, 106 S.Ct. 3328], judgment in *People* v. *Hamilton* (1985) 41 Cal.3d 408 [221 Cal.Rptr. 902] was vacated and the cause remanded in light of *Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101]. Upon remand, the denial of defendant's *Farretta* motion was affirmed. (*People* v. *Hamilton* (1988) 45 Cal.3d 351, 369 [247 Cal.Rptr. 31, 753 P.2d 1109].)

upon a denial of a *Marsden* motion. Furthermore, in the present case, the trial court made no comments tantamount to a finding that defendant was playing "the *Faretta* game," as did the trial court in *Williams*. In fact, although concerned with the age of the case, the trial court assured defense counsel that it did not believe that the defense was trying to delay the proceedings.

Under the circumstances presented here, including the fact that the court expressly contemplated a continuance if defense cocounsel was replaced because of a conflict in her schedule, we find defendant's *Faretta* motion was timely.

■ "The only determination a trial court must make when presented with a timely *Faretta* motion is ' "whether the defendant has the mental capacity to waive his constitutional right to counsel with a realization of the probable risks and consequences of his action." . . . It is not, however, essential that defendant be competent to serve as counsel in a criminal proceeding . . . ; "his technical legal knowledge, as such, is not relevant to an assessment of his knowing exercise of the right to defend himself." [Citation.]' . . . One need not pass a 'mini bar examination' in order to exhibit the requisite capacity to make a valid *Faretta* waiver. [Citation.]" (*People* v. *Joseph, supra*, 34 Cal.3d 936, 943.) ■ In the present case, the trial court did not find, and the record does not reflect that defendant lacked the mental capacity to waive his constitutional right to counsel with a realization of the probable risks and consequences of such action. Therefore, the court's denial of defendant's timely *Faretta* motion was error.

■ The erroneous denial of a timely motion for self-representation is per se reversible. (*People* v. *Joseph, supra*, 34 Cal.3d 936, 948; *People* v. *Tyner* (1977) 76 Cal.App.3d 352, 356 [143 Cal.Rptr. 52]; *People* v. *Freeman, supra*, 76 Cal.App.3d 302, 309.) "Only a per se rule of reversal will ensure that the accused's freedom of choice will be scrupulously honored out of ' "respect for the individual which is the lifeblood of the law." ' (*Faretta, supra*, 422 U.S. at p. 834 . . . .)" (*People* v. *Joseph, supra*, 34 Cal.3d at p. 946.)

We reverse the judgment of conviction and remand the cause for further proceedings consistent with the views herein expressed. Upon remand, the trial court shall reconsider defendant's motion solely to determine whether his choice to proceed in propria persona is freely and intelligently made. (*People* v. *Freeman, supra*, 76 Cal.App.3d at p. 313.)

In light of this disposition, we need not and do not reach defendant's second contention.

Taylor, J.,* concurred.

**EPSTEIN, J.**—I concur in the judgment. I believe that as a general proposition, a motion by a defendant to discharge counsel and proceed in propria persona, made so close to an upcoming trial date that the date must be vacated, witnesses resubpoenaed and schedules rearranged, is not made within a "reasonable time" under the *Windham* standard. (*People* v. *Windham* (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8, 560 P.2d 1187].) The tardiness of the motion does not mean that it must be denied; it simply means that the decision of whether or not to grant it is discretionary with the trial court. (*Id.*, at p. 124.) On the other hand, a timely pro se motion brought by a defendant who is able to proceed in that manner (cf. *People* v. *Manago* (1992) 220 Cal.App.3d 982, 986 [269 Cal.Rptr. 819]; *People* v. *Watkins* (1992) 6 Cal.App.4th 595, 600 [8 Cal.Rptr.2d 5]) must be granted. (*People* v. *Windham*, *supra*, 19 Cal.3d at p. 124.)

When the defendant in this case finally made an unequivocal motion to represent himself, on November 1, 1989, he said that he knew he could not be ready for trial by November 28, and that he did not know how much time would be needed. But when he said this, the trial date had been set only moments before, and no witnesses had been subpoenaed or schedules set. And it is plain from the colloquy between court and counsel that it was highly unlikely that the case would actually go to trial on November 28. In fact, defense counsel repeatedly and emphatically declined to announce that he would be ready by that date, and he fully explained why more time would be needed. Trial did not begin until two months after the announced date, on January 29, 1990.

Under these circumstances, I have to agree that the request was made within a "reasonable time" under *Windham*, and that the trial court was therefore required to grant it.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.