Filed 2/23/21  P. v. Ayala CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSE LUIS AYALA,<br><br>Defendant and Appellant. | B301443<br><br>(Los Angeles County Super. Ct. No. KA106636) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven D. Blades, Judge.  Remanded and modified in part; affirmed in part.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Jose Luis Ayala in January 2016 for the April 2014 attempted murder of Jose and Fidel Hernandez, one count of possession of a firearm by a felon, and two counts of assault with a firearm.  In April 2018, the trial court vacated the judgment and granted Ayala a new trial.

On February 19, 2019—the day Ayala's retrial was set to begin—Ayala requested under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) that he be permitted to represent himself during the second trial.  After a hearing, during which Ayala requested a continuance should the trial court grant his *Faretta* motion, the trial court denied the motion.

The second jury also convicted Ayala of all five counts alleged against him and found true various factual allegations that had been alleged in the information.  At sentencing, in addition to other sentencing decisions, the trial court imposed but stayed a one-year prior prison term enhancement under Penal Code section 667.5, subdivision (b) and imposed a five-year prior felony enhancement under section 667, subdivision (a)(1) on count 3.

Ayala contends on appeal that the trial court abused its discretion when it denied his *Faretta* motion.  Ayala also argues that under Senate Bill No. 136, we must strike the one-year prior prison term enhancement that the trial court imposed but stayed and the five-year prior felony enhancement the trial court imposed on count 3.

We will affirm the trial court's judgment.  But we will strike the Penal Code section 667.5, subdivision (b) and 667, subdivision (a)(1) enhancements imposed on count 3 from the

judgment and instruct the trial court to file an amended abstract of judgment.

## BACKGROUND

On July 7, 2014, Ayala shot brothers Jose and Fidel Hernandez during an altercation outside a triplex in Pomona where the three all lived. Ayala fled to Mexico and was arrested at the Mexican border as he reentered the United States on July 23, 2014.

The People charged Ayala by information with two counts (one for each Hernandez brother) of attempted murder (Pen. Code, §§ 664 & 187, subd. (a)),[1] possession of a firearm by a felon (§ 29800, subd. (a)(1)), and two counts (again, one for each Hernandez brother) of assault with a firearm (§ 245, subd. (a)(2)). The information alleged that Ayala had personally used and discharged a firearm in the commission of the attempted murders and that he personally inflicted great bodily injury upon each of the Hernandez brothers during the commission of the assaults with a firearm. The People also alleged as to the firearm possession and assault with a firearm charges that Ayala had suffered two prior prison terms for purposes of section 667.5, subdivision (b), that he had suffered a prior conviction for purposes of the "Three Strikes law" (§§ 667, subds. (b)-(j), 1170.12), and that he had suffered a prior conviction for purposes of section 667, subdivision (a).

The case was tried to a jury in January 2016. The jury found Ayala guilty of all counts and found true all of the

---

[1] Further unspecified statutory references are to the Penal Code.

enhancement allegations in the information. After trial, Ayala substituted private counsel in place of Ayala's trial counsel.

The trial court vacated the jury's verdict and granted Ayala a new trial on April 16, 2018.

Ayala's retained counsel was relieved and he was appointed a public defender for trial on April 27, 2018. On May 17, 2018, the public defender's office was relieved and an alternate public defender was appointed for Ayala. Finally, on May 18, 2018, the alternate public defender's office was relieved and a bar panel defense attorney was appointed to represent Ayala at trial.

On the morning of October 9, 2018, the People dismissed and refiled the case and the trial court arraigned Ayala again. The trial court set the matter for trial to begin December 5, 2018.

The afternoon of October 9, 2018, Ayala's counsel requested a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) for Ayala to ask the court for a substitution of counsel; the trial court set the *Marsden* motion for hearing on October 19, 2018. At the *Marsden* hearing, Ayala's counsel informed the trial court that counsel was ready for trial. After the hearing, the trial court denied Ayala's request to substitute counsel.

On December 5, 2018, the trial court called the case to reset the trial after learning that Ayala's counsel had broken his hip and was in the hospital. Ayala declined to waive time for trial and requested another *Marsden* hearing. Citing counsel's absence, the trial court declined to hear Ayala's *Marsden* request on that date and set the matter for trial on January 8, 2019 over Ayala's objection.

At a hearing on January 8, 2019, Ayala's counsel requested a brief continuance because of the unavailability of witnesses, and the trial court trailed the matter to January 29, 2019.

4

At the conclusion of the January 8, 2019 hearing, Ayala again requested a *Marsden* hearing and asked the trial court to "give [him] another attorney." The trial court denied Ayala's second *Marsden* motion.

On January 29, 2019, Ayala's counsel again requested a brief continuance—to February 19, 2019—for treatment of complications in his recovery from his broken hip. On the record at that hearing, Ayala declined to waive time for trial and requested another *Marsden* hearing. Based on counsel's absence, the trial court set the *Marsden* hearing for the next court date—February 19, 2019.

The trial court's minute order for January 29, 2019 contains the following entry: "Later, off the record and after the matter was called: [¶] The defendant notifies the court bailiff that he wished to proceed in pro per. [¶] *Faretta* waiver is filled out and placed in the court file. [¶] The People and defense counsel not being present, the matter as to the defendant's representation is to be addressed on the next court date." Ayala's *Faretta* waiver form is signed and dated January 29, 2019, but was stamped "received" by the trial court on February 19, 2019.

On February 19, 2019—the date the matter was set for trial—the matter was transferred to another department for trial. As the trial court discussed pretrial matters and jury selection with counsel for the parties, Ayala requested a *Marsden* hearing. The trial court immediately cleared the courtroom and held a combined *Marsden* and *Faretta* hearing.

During the argument, the trial court asked Ayala, "What if I grant your *Marsden* motion now? Where are we?" and explained to Ayala that he'd "have two choices": "We continue the trial while you get another attorney, who will take at least six

5

months or so to get ready to go to trial, or you start trial today pro per."

After a break to review his *Faretta* waiver form and consider his options, Ayala told the court that he would like to represent himself and requested a continuance "to file motions," but did not specify the nature or timing of the motions. The trial court explained, "That's not going to work because if I grant your pro per status, we have a jury out there and we're gonna start today. If you're not ready to start today, I will deny pro per status." Ayala confirmed that he was not ready to go to trial that day, and the judge denied his motion to proceed pro per. The trial court heard further argument regarding Ayala's *Marsden* motion and also denied that motion.

The trial began immediately. As the jury deliberated, Ayala admitted the allegations involving prior strikes and prison terms, and the trial court accepted Ayala's admission. The jury returned its verdict on February 22. The jury found Ayala guilty on all counts and found true all of the enhancement allegations contained in the information.

On March 21, 2019, Ayala requested a continuance to retain private counsel, and private counsel substituted in for Ayala's trial attorney on April 11, 2019. Ayala's new attorney requested and received continuances to file posttrial motions. The trial court denied Ayala's posttrial motions.

After Ayala's requested continuances and hearings on Ayala's posttrial motions, the trial court sentenced Ayala on September 12, 2019. On count 3, which the trial court deemed the base count, Ayala was sentenced to 11 years in state prison, which was the upper term of three years, doubled to six years under the Three Strikes law, and an additional five years for a

prior serious felony conviction (§ 667, subd. (a)(1)), and a one-year term (stayed) for the prior prison term enhancement (§ 667.5, subd. (b)).  On counts 1 and 2, the trial court sentenced Ayala to consecutive indeterminate terms of 44 years to life, composed of seven years to life, doubled to 14 years to life under the Three Strikes law, plus terms of 25 years to life for the firearm enhancement (§ 12022.53, subd. (c)) and a prior strike under section 667, subdivision (a)(1).  The trial court imposed and stayed sentences for the assault with a firearm counts.

Ayala filed a timely notice of appeal.

## DISCUSSION

### A. *Faretta*

"In *Faretta*, the United States Supreme Court made clear that a criminal defendant has a federal constitutional right to represent himself if he voluntarily and intelligently so chooses.  [Citation.]  A trial court must grant a defendant's request for self-representation if the request is timely and unequivocal, and the defendant makes his request voluntarily, knowingly, and intelligently.  [Citation.]  If a self-representation motion is untimely, however, it is 'within the sound discretion of the trial court to determine whether such a defendant may dismiss counsel and proceed *pro se*.' " (*People v. Johnson* (2019) 8 Cal.5th 475, 499 (*Johnson*).)

Our Supreme Court has "long held that a *Faretta* motion is timely if it is made 'within a reasonable time prior to the commencement of trial.' " (*Johnson, supra*, 8 Cal.5th at p. 499.)  The " 'reasonable time' requirement 'must not be used as a means of limiting a defendant's *constitutional* right of self-representation,' but rather to prevent the defendant from 'misus[ing] the *Faretta* mandate as a means to unjustifiably delay

7

a scheduled trial or to obstruct the orderly administration of justice.' " (*Ibid.*) "Even at the trial level," the United States Supreme Court has explained, "the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." (*Martinez v. Court of Appeal of California, Fourth Appellate Dist.* (2000) 528 U.S. 152, 162.) "*Faretta* motions made on the eve of trial are untimely." (*People v. Lynch* (2010) 50 Cal.4th 693, 722, abrogated on other grounds by *People v. McKinnon* (2011) 52 Cal.4th 610, 620; accord *Johnson*, at p. 499.)

Ayala contends that the trial court abused its discretion when it denied his *Faretta* motion on the day his trial was set to begin because, he argues, the record makes it clear that Ayala did not bring the motion for the purpose of delay. In his briefing and at argument, Ayala characterized the trial court's actions at the combined *Faretta*/*Marsden* hearing on February 19, 2019 as offering Ayala a choice between granting the *Faretta* motion and allowing Ayala to go to trial that day or granting the *Marsden* motion and continuing the trial date long enough to allow new counsel to prepare the matter for trial. Ayala's briefing here strongly implies that the only factor the trial court may consider when deciding an untimely *Faretta* motion is whether the motion was brought for the purpose of delaying trial.

We disagree with Ayala's characterization of the trial court's statements at the *Faretta*/*Marsden* hearing. At that hearing, the trial court explained to Ayala what the consequences would be *if* he granted either motion. The trial court explained that it would grant the *Faretta* motion *if* Ayala were ready to proceed to trial *that day*. And the trial court explained that, contrary to Ayala's stated wish to start trial soon, there would be

8

significant delay if the trial court granted the *Marsden* motion. Based on Ayala's decision that he would not start trial that day if he represented himself, the trial court—independent of the *Marsden* motion—denied the *Faretta* motion. The trial court then heard Ayala's third *Marsden* motion on the merits and denied it.

Ayala cites *People v. White* (1992) 9 Cal.App.4th 1062 to support his *Faretta* contentions here. That case, however, dealt with a determination whether the *Faretta* motion was timely in the first instance, and if so, how the trial court must analyze the *Faretta* motion. It did *not* deal with an *untimely* motion and the factors that circumstance imports into the trial court's analysis. Aside from dealing with a *Faretta* motion, *People v. White* is inapposite.

The trial court "may consider the totality of the circumstances in determining" whether to deny a *Faretta* motion as untimely. (*Johnson*, *supra*, 8 Cal.5th at p. 500.) The "trial court may properly consider 'not only the time between the motion and the scheduled trial date, but also such factors as whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation.' " (*Ibid.*) In earlier opinions, the Supreme Court articulated other factors: "Among other factors to be considered by the court in assessing" untimely *Faretta* requests "are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, *the reasons for the request*, the length and stage of the proceedings, and the disruption or delay which might reasonably

9

be expected to follow the granting of such a motion.  Having established a record based on such relevant considerations, the court should then exercise its discretion and rule on the defendant's request." (*People v. Windham* (1977) 19 Cal.3d 121, 128-129, italics added.)

The record discloses that Ayala had been through an entire trial, a successful motion for a new trial, and a dismissal and refiling of the information against him, as well as two unsuccessful *Marsden* motions before he brought his *Faretta* motion on *the day* his case was transferred to a department for jury selection and a second trial.  The original information in Ayala's case was filed on December 26, 2014.  Ayala had four years' worth of opportunities to file a *Faretta* request before the trial date in his retrial, but had never done so.  The reporters' transcript from the *Faretta* hearing also makes clear that the trial court had considered the quality of Ayala's legal representation, that the motion was brought *not on the eve of trial, but as the jury panel awaited selection*, and that the case involved two counts of attempted murder and multiple enhancement allegations compounding the complexity of the matter for even experienced attorneys.  The trial court was also presumably aware of Ayala's "proclivity to substitute counsel," evidenced by his multiple substitutions of counsel between the first trial and the second.

The reason for the *Faretta* request is only *one factor* the trial court must consider.  "The fact that the granting of the motion will cause a continuance, and that this will prejudice the people, may be evidence of the defendant's dilatory intent." (*People v. Burton* (1989) 48 Cal.3d 843, 854 (*Burton*).)  The trial

court could have concluded, therefore, that the motion *was* brought to delay.

We also note that a trial court may deny a *Faretta* "motion for self-representation in the first instance when a defendant's conduct prior to the *Faretta* motion gives the trial court a reasonable basis for believing that his self-representation will create disruption. 'The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.' " (*People v. Welch* (1999) 20 Cal.4th 701, 734.) Immediately before clearing the courtroom for the combined *Faretta*/*Marsden* hearing, the trial court learned that Ayala had attacked prisoners and deputies while in custody, that Ayala had been warned that morning about courtroom behavior, that multiple bailiffs were present because of Ayala's propensity to disrupt proceedings, and that, according to the prosecutor, "Mr. Ayala spat at the [prosecutor]" during his first trial. *During* the *Faretta* hearing, the trial court stopped the hearing to warn Ayala again about behavior that interrupted *that* hearing.

Here, like the defendant in *Burton, supra*, 48 Cal.3d at page 853, Ayala "did not invoke his right to self-representation until after the case had been called for trial, both counsel had answered ready, and the case had been transferred to a trial department for pretrial motions and a jury trial." A jury panel was waiting to be seated for voir dire as the trial court conducted the *Faretta*/*Marsden* hearing. Here, as in *Burton*, "[u]nder the circumstances, the motion was clearly directed to the sound discretion of the trial court." We review the trial court's ruling, not its rationale. "[I]f the record as a whole establishes" that the *Faretta* motion was properly denied on any ground, "we would

11

uphold the trial court's ruling." (*People v. Dent* (2003) 30 Cal.4th 213, 218.) The trial court's order denying the *Faretta* motion is supported *not only* by the trial court's stated rationale, but by a variety of factors that the record indicates the trial court *could have* (and may have) considered when it made its ruling. Ayala's inability to start trial, and Ayala's past and recent courtroom behavior both supported the trial court's order. Ayala has not demonstrated that the trial court abused its discretion when it denied his *Faretta* motion as Ayala's retrial began.

## B. Sentencing Enhancement Issues

Ayala contends, and the People agree, that under Senate Bill No. 136, we must strike a one-year enhancement imposed (but stayed) pursuant to section 667.5, subdivision (b) because neither of the prior convictions Ayala admitted to support the enhancement is a sexually violent offense as that term is defined in Welfare and Institutions Code section 6600, subdivision (d). (See *People v. Choi* (2021) 59 Cal.App.5th 753, ___.) We agree with the parties and will strike the one-year enhancement imposed (and stayed) on count 3 under section 667.5, subdivision (b).

Ayala also contends, and the People again agree, that we must strike the five-year section 667, subdivision (a)(1) enhancement imposed on count 3 because the enhancement applies to "any person convicted of a serious felony," and the possession of a firearm by a felon under section 29800, subdivision (a)(1) is not a "serious felony" for purposes of section 667, subdivision (a)(1) because it is not enumerated in section 1192.7, subdivision (c). Again, we agree with the parties and will strike the five-year enhancement imposed under section 667, subdivision (a)(1) on count 3.

12

## DISPOSITION

The matter is remanded to the trial court with instructions to strike the one-year enhancement under section 667.5, subdivision (b) and the five-year enhancement under section 667, subdivision (a)(1) imposed on count 3. The trial court will issue an amended abstract of judgment and forward a certified copy of the abstract of judgment to the Department of Corrections and Rehabilitation. The trial court's judgment is affirmed in all other respects.

NOT TO BE PUBLISHED


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13