Filed 4/9/25  P. v. Coleman CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

<table>
<tr><td>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GARY MITCHELL COLEMAN, JR.,<br><br>    Defendant and Appellant.</td><td>E082362<br><br>(Super.Ct.No. FVI17000111)<br><br>OPINION</td></tr>
</table>

APPEAL from the Superior Court of San Bernardino County.  Charlie Hill, Judge. Affirmed and remanded with directions.

Sally Patrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles S. Ragland, Assistant Attorney General, Daniel Rogers, Alana R. Butler and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

1

**INTRODUCTION**

On a Saturday morning in May 2015, appellant Gary Mitchell Coleman, Jr., (Coleman) drove home after a night out drinking in Las Vegas. Around 6:30 a.m., he was seen driving over 130 miles per hour and weaving in and out of traffic on a rural stretch of Interstate 15. Minutes later, he rear-ended a sport utility vehicle (SUV), causing the SUV to flip over and roll across the lanes of oncoming traffic, killing the driver.

Coleman was convicted by a jury of vehicular manslaughter while intoxicated. (Pen. Code, § 191.5, subd. (b).)[1] He was sentenced to the middle term of two years.

Coleman contends the trial court erred in sentencing him to the middle term of two years, rather than the lower term of 16 months. He asserts that under section 1170, subdivision (b)(6), the lower term was presumed due to his youth and psychological trauma, and that the court abused its discretion by relying on improper aggravating factors to conclude that imposition of the lower term was not in the interests of justice. He also contends the court miscalculated his presentence credits and that the minute order for the sentencing hearing incorrectly reflects that the court imposed the upper term of two years.

We agree the minute order should be corrected to reflect that the court imposed the middle term of two years and otherwise affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

# BACKGROUND

## 1. *The Underlying Offense*

### A. *Prosecution Evidence*

On May 2, 2015, a little before 6:30 a.m., a driver on a rural stretch of Interstate 15 near the city of Baker called 911 to report that a silver Mercedes had just passed him going around 145 miles per hour. At trial, the driver estimated the Mercedes was going about 60 miles per hour faster than he was, which he calculated to be around 130 or 135 miles per hour. When the Mercedes passed the driver, it missed hitting his car by about a foot, then overextended onto the left shoulder before correcting back into the lane. The driver watched the Mercedes weave in and out of traffic over the next few miles, and he called 911 to report it.

Within minutes of the driver's 911 call, the Mercedes rear-ended an SUV, causing the SUV to roll across the lanes of oncoming traffic and crash. The driver of the SUV was ejected from her vehicle and died at the scene. The Mercedes spun out and came to rest in the dirt area of the center median.

When law enforcement and emergency personnel arrived, Coleman was removed from the driver's seat of the Mercedes and placed on a gurney. His eyes were bloodshot and he smelled like alcohol. He was lethargic. He admitted to the responding officer that he rear-ended a vehicle, but his voice was low and hard to understand. He attempted to give a breath sample, but did not provide enough air for the machine. A later blood draw reflected a blood-alcohol content of 0.12 percent. A person is impaired for purposes of driving a vehicle at 0.08 percent.

3

Later that afternoon, after being medically cleared, Coleman waived his *Miranda*[2] rights and spoke with an officer. Coleman told the officer he was driving back from Las Vegas when the collision occurred. The day before the collision was a Friday. Coleman worked that day and left for Las Vegas around 5:00 p.m. He was operating on only a few hours of sleep because he had locked himself out of his apartment the night before.

Coleman arrived in Las Vegas around 10:00 p.m. and got something to eat. Around midnight he met up with a fraternity brother named "Big Lou" at the apartment of one of Big Lou's friends. Coleman had a shot of vodka at the apartment, and then around 1:00 a.m. went to a strip club with Big Lou and a couple of Big Lou's friends. Coleman had a beer and a shot of tequila at the strip club. Around 3:30 a.m. they went to a casino. While at the casino, Coleman got emotional about his girlfriend and got into an argument with Big Lou. Coleman left the casino around 5:00 a.m. and began driving home. He was tired and felt the effects of the alcohol while he was driving. He did not remember how the collision occurred. He told the officer he probably fell asleep.

B. *Defense Evidence*

Coleman testified in his own defense.[3] He was 24 years old at the time of the collision. He was in the Navy and recently stationed at Lemoore Naval Base. He

---

**2**    *Miranda v. Arizona* (1966) 384 U.S. 436.

**3**    Coleman's testimony addressed the events leading up to the collision. We summarize only those facts that differ or add to the statement he gave to law enforcement.

4

explained that although he only had a couple hours of sleep the night before he went to Las Vegas, he had been trained in the Navy to operate on short sleep.

Coleman went to Las Vegas to meet his girlfriend. He was initially planning to stay overnight with Big Lou, but after they got into the argument at the casino, Big Lou told Coleman he could not stay with him that night.

Coleman left the casino around 4:00 or 5:00 a.m. and took a nap in his car. He felt refreshed when he woke up and began driving home. At some point that changed, and he felt the effects of the alcohol and felt tired. The last thing Coleman remembered was hitting a stretch of the freeway that did not have any rest stops. He explained, "sleep just came over me. … [I]t was almost like a dream … and then boom." Coleman hit his head and the air bags deployed. Later, someone pulled him out of the car and told him he murdered someone. He was in shock. He knew he was driving fast, but did not recall how fast. Nor did he recall seeing the SUV before he struck it.

2. *Procedural History*

A. *The Charges and Conviction*

The prosecution charged Coleman with gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)), and alleged multiple aggravating circumstances (§ 1170, subd. (b)(2)).

Eventually the case went to trial, and a jury convicted Coleman of the lesser included offense of vehicular manslaughter while intoxicated with ordinary negligence. (§ 191.5, subd. (b).) Following a bifurcated proceeding, the trial court found true a single

5

aggravating circumstance, that the crime involved great bodily harm that resulted in the victim's death.  (Cal. Rules of Court, rule 4.421(a)(1).)**4**

B.  *The Sentencing Hearing*

The probation officer's report and the parties' sentencing briefs identified the rebuttable low term presumption of section 1170, subdivision (b)(6), and the corollary rule 4.420(e), as a sentencing consideration for the court.  In light of the presumption, the probation officer recommended the court impose the low term of 16 months with a period of mandatory supervision.  Defense counsel requested the court place Coleman on probation or impose the low term, and the prosecutor requested the upper term of four years.

The court found Coleman was not suitable for probation for "numerous reasons" including his testimony "that while he was driving he felt the effects of alcohol and was tired from lack of sleep; however, he continued to drive" and he "was driving in and out of traffic at a high rate of speed at the time of the accident" which "poses [a] high risk [of] danger to members of society who are using California roads."  The court also denied mandatory supervision, finding it was contrary to the interests of justice based on the seriousness of the crime and the great bodily harm it caused.  As to the aggravating and mitigating factors, the court found the aggravating factor of great bodily harm was established (rule 4.421(a)(1)), and found as mitigating factors that Coleman did not have

---

**4**     All further rule references are to the California Rules of Court.

a prior record, and he was under age 26 when he committed the offense. (Rule 4.423(b)(1), (b)(6).)

The court then addressed section 1170, subdivision (b)(6). The court recognized "there is information on the record on this case that suggests the defendant showed signs of depression from abuse while he was in the military … [and that] the defendant was a youth at the time of the commission of the crime as defined by the code, which means he was under the age of 26. However, the Court also finds that the aggravating factor of great bodily harm and the death of [the victim] outweighs the mitigating circumstances such that the imposition of the lower term will be contrary to the interest of justice." The court again stated that Coleman "felt the effects of the alcohol, yet he made a choice to continue driving because he wanted to get home. He had an option to pull his car over and wait [for] more time to become sober, and he still could have made it home. He failed to do so. He chose to continue driving."

Then, based on "all the factors" it considered, the court sentenced Coleman to the middle term of two years.

Coleman timely filed a notice of appeal.

### DISCUSSION

1. *The Court Properly Imposed the Middle Term of Two Years*

Coleman contends the court erred in sentencing him to the middle term of two years. He asserts that under section 1170, subdivision (b)(6), the low term was presumed due to his youth and the psychological trauma he experienced while in the military, and that the court abused its discretion by relying on improper aggravating factors to

conclude that imposition of the low term was not in the interests of justice. He requests this court remand for a new sentencing hearing or simply impose the low term.

The People counter that the presumptive low term did not apply because Coleman did not establish his youth or psychological trauma was a contributing factor in the commission of the offense. Alternatively, the People argue any error in relying on improper aggravating factors was harmless because the court relied on other proper aggravating factors.

We agree with Coleman that the court abused its discretion by relying on an improper aggravating factor, but we find the error was harmless and conclude the court properly sentenced Coleman to the middle term.

A. *Applicable Legal Standards*

The punishment for felony vehicular manslaughter while intoxicated is 16 months, two years, or four years. (§ 191.5, subd. (c)(2).)

The trial court's selection of the upper, middle, or lower term is governed by section 1170, subdivision (b). Under that provision, the court may not impose a sentence that exceeds the middle term unless the aggravating factors on which it relies (with the exception of prior convictions based on a certified record) have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or at a court trial. (§ 1170, subd. (b)(1)-(3); rule 4.420(a)-(c); *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 904.) Section 1170, subdivision (b)(1), provides: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as

8

otherwise provided in paragraph (2)." Paragraph (2) authorizes the court to "impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

Notwithstanding the presumptive middle term of section 1170, subdivision (b)(1), section 1170, subdivision (b)(6) creates a rebuttable presumption in favor of the lower term. Under section 1170, subdivision (b)(6), if the court finds the defendant "experienced psychological, physical, or childhood trauma" or "was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense," and that the defendant's youth or psychological trauma "was a contributing factor in the commission of the offense," then the court must impose the lower term "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6); *People v. Hilburn* (2023) 93 Cal.App.5th 189, 205 (*Hillburn*).) Youth is defined as "any person under 26 years of age on the date the offense was committed." (§ 1016.7, subd. (b).)

The aggravating circumstances a court relies on to support a finding that the lower term would be "'contrary to the interests of justice'" under section 1170, subdivision (b)(6), do not need to have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or in a court trial. (*People v. Bautista-Castanon* (2023) 89

9

Cal.App.5th 922, 928-929 [distinguishing between § 1170, subd. (b)(2) & (6)]; *Hilburn*, *supra*, 93 Cal.App.5th at pp. 204-205; rule 4.420(d); see Advisory Com. com., Cal. Rules of Court, rule 4.421 ["since the court is not addressing the imposition of the upper term, the court may consider factors in aggravation that have not been stipulated to by the defendant or found true beyond a reasonable doubt at trial by the jury or the judge in a court trial"].)

The aggravating and mitigating circumstances a court may take into consideration are set forth in rules 4.421 and 4.423. These rules list specific factors for the court to consider, while also allowing the court to consider any other factors "that reasonably relate to the defendant or the circumstances under which the crime was committed." (Rules 4.421(c), 4.423(c).) Rule 4.408(a) also allows the court to consider additional aggravating and mitigating factors, provided the additional factors are "stated on the record" and are "reasonably related to the decision being made." The sentencing court may not, however, consider a fact that is an element of the crime as an aggravating factor. (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1261-1262 (*Burbine*); rule 4.420(h) ["A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term"].)

"After a sufficient factual basis to support the circumstances in aggravation or mitigation is found, the [trial] court enjoys broad discretion in its sentencing determination." (*Hilburn*, *supra*, 93 Cal.App.5th at p. 205.) We review the court's discretionary sentencing decisions, including its weighing of aggravating and mitigating circumstances under section 1170, subdivision (b)(6), for an abuse of discretion. (*People*

10

*v. Salazar* (2023) 15 Cal.5th 416, 428, fn. 8.) The court must exercise its discretion "'in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an "individualized consideration of the offense, the offender, and the public interest."'" [Citation.] The court abuses 'its discretion … if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.'" (*Hilburn*, at p. 206; *People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

B. *Analysis*

We start by addressing the People's contention that the low term presumption of section 1170, subdivision (b)(6), did not apply.

To trigger the low term presumption of section 1170, subdivision (b)(6), there must be an initial showing that the defendant's youth (or other trauma) was a "'contributing factor'" in the commission of the offense. (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 992 (*Fredrickson*).) "[A]n initial showing has been made when the record and/or arguments are sufficient to put a trial court on notice that a defendant's youth may have been a contributing factor in [his or her] commission of the underlying offense." (*Id*., at p. 994.)

An initial showing was made here. The probation officer's report and the parties' sentencing briefs identified the low term presumption of section 1170, subdivision (b)(6), and the corollary rule 4.420(e), as a sentencing consideration for the court, and the underlying facts of the offense—the reckless driving, excessive speeding, and decision to make the five-hour drive home from Las Vegas after having stayed up nearly all night

11

drinking—were sufficient to put the court on notice that Coleman's youth may have been a contributing factor in his commission of the offense.

Once an initial showing has been made, the record must "'affirmatively' show compliance with the statute." (*Fredrickson*, *supra*, 90 Cal.App.5th at p. 992.) As the People point out, the court did not expressly find that Coleman's youth and psychological trauma were contributing factors in his commission of the offense. It did, however, expressly state that it considered section 1170, subdivision (b)(6), it then noted that the record included evidence of Coleman's youth and psychological trauma, and it went on to find that the aggravating circumstances outweighed the mitigating circumstances, such that imposition of the low term was contrary to the interests of justice. Under these circumstances, we conclude the court made an implied finding that Coleman's youth and psychological trauma were contributing factors in his commission of the offense. (See *People v. Fulkman* (1991) 235 Cal.App.3d 555, 560 ["'[w]here there are no express findings of fact, it is implied that the trial court … made whatever findings were necessary to support the judgment or order'"].)

We further conclude there is substantial evidence in the record to support the court's implied finding. (See *People v. Watkins* (1992) 6 Cal.App.4th 595, 600 [implied findings will be upheld if supported by substantial evidence].) The facts of the underlying offense, as noted *ante*—the reckless driving, excessive speeding, and decision to make the five-hour drive home after having stayed up nearly all night drinking— reflect the "hallmark features" of youth, which include "immaturity, impetuosity, and failure to appreciate risks and consequences." (*Miller v. Alabama* (2012) 567 U.S. 460,

12

477.) We therefore reject the People's argument that Coleman failed to establish that his youth or psychological trauma contributed to the offense.[5]

Next, we address Coleman's claim that the court abused its discretion by relying on improper aggravating factors to conclude that imposition of the low term was contrary to the interests of justice.

The sole aggravating factor the court relied on to rebut the low term presumption of section 1170, subdivision (b)(6), was that the crime involved great bodily harm that resulted in the victim's death. (Rule 4.421(a)(1).) The court stated: it "finds that the aggravating factor of great bodily harm and the death of [the victim] outweighs the mitigating circumstances such that the imposition of the lower term will be contrary to the interest of justice."

The People correctly concede that the court erred in relying on great bodily harm as an aggravating factor. It is settled that the court may not consider an element of the substantive offense as a factor in aggravation. (*Burbine*, *supra*, 106 Cal.App.4th at pp. 1261-1262; rule 4.420(h).) "Bodily harm resulting in death is an element of felony vehicular manslaughter. *Reliance upon that fact alone* is improper when trying to aggravate a term of imprisonment." (*People v. McNiece* (1986) 181 Cal.App.3d 1048, 1061, disapproved on other grounds in *People v. McFarland* (1989) 47 Cal.3d 798, 804–

---

[5] Because we conclude Coleman's youth was sufficient to trigger the presumptive low term under section 1170, subdivision (b)(6), we need not address whether Coleman's psychological trauma was also a contributing factor. The existence of a single contributing factor is sufficient to trigger the presumptive low term. (§ 1170, subd. (b)(6).)

805; accord *People v. Piceno* (1987) 195 Cal.App.3d 1353, 1357 [sentencing court may not rely on great bodily harm as an aggravating factor for vehicular manslaughter because manslaughter involves the killing of a human being which is "the greatest of all bodily harm"].) The People contend, however, that the error was harmless because the court relied on other aggravating factors that were not elements of the offense.

In assessing prejudice, we apply the *Watson*[6] standard because the court's consideration of aggravating factors in determining whether the low term is contrary to the interests of justice under section 1170, subdivision (b)(6), does not implicate federal constitutional error. (*Hilburn*, *supra*, 93 Cal.App.5th at pp. 202–205; rule 4.420(d); see *People v. Lynch* (2024) 16 Cal.5th 730, 755 [*Watson* standard applies "to errors of state law that do not rise to the level of federal constitutional error"].) Under the *Watson* standard, "[i]n order to determine whether error by the trial court in relying upon improper factors in aggravation requires remanding for resentencing 'the reviewing court must determine if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."'" (*People v. Avalos* (1984) 37 Cal.3d 216, 233 (*Avalos*); *People v. Watson*, *supra*, 46 Cal.2d at p. 836.) A reasonable probability of a lesser sentence exists when the improper factor was determinative for the sentencing court or where the reviewing court cannot make that determination. (*Avalos*, *supra*, at p. 233; see *People v. McDaniels* (2018) 22 Cal.App.5th 420, 426 [when a trial court has "rel[ied] on an improper sentencing factor, a reviewing court must still affirm

---

**6**    *People v. Watson* (1956) 46 Cal.2d 818, 836.

14

unless 'the error complained of has resulted in a miscarriage of justice.' [Citation.] In these situations, the trial court has revealed which sentencing choice it prefers, and the reviewing court must decide whether there is a reasonable probability that the trial court's lawful exercise of discretion on remand will lead it to make a different choice"].) We take into consideration all of the factors the court relied on at the sentencing hearing. (*Avalos*, at p. 233.)

Although the court found only one aggravating factor under rule 4.421—that the crime involved great bodily harm—it emphasized other aggravating facts about the offense while imposing sentence. For example, the court stated "that while [Coleman] was driving he felt the effects of alcohol and was tired from lack of sleep; however, he continued to drive" and he "was driving in and out of traffic at a high rate of speed at the time of the accident" which "poses [a] high risk [of] danger to members of society who are using California roads." And later, the court reiterated that Coleman "felt the effects of the alcohol, yet he made a choice to continue driving because he wanted to get home. He had an option to pull his car over and wait [for] more time to become sober," but "[h]e chose to continue driving."

We agree with the People that these facts, as found by the court, are appropriately considered aggravating factors and should inform our prejudice analysis because they made the offense "distinctively worse than the ordinary" (*People v. Moreno* (1982) 128 Cal.App.3d 103, 110), and under rules 4.408 and 4.421, they reasonably relate "to the decision being made" (rule 4.408(a)) and to the "circumstances under which the crime was committed" (rule 4.421(c)).

15

Coleman contends the court was not permitted to consider his intoxication as an aggravating factor because, like great bodily harm, it was an element of the offense.

Intoxication, or driving with a blood-alcohol content in excess of 0.08 percent, is clearly an element of vehicular manslaughter while intoxicated. (§ 191.5, subd. (b); Veh. Code, §§ 23152, 23153; CALCRIM No. 591.) "However, where the facts surrounding the charged offense exceed the minimum necessary to establish the elements of the crime, the trial court can use such evidence to aggravate the sentence." (*People v. Castorena* (1996) 51 Cal.App.4th 558, 562.) Here, the court relied on more than the mere fact of Coleman's intoxication. It was Coleman's subjective awareness of "the effects of alcohol and [being] tired from lack of sleep" and the conscious decision he made to continue driving that the court found aggravating.

The court also found the nature of Coleman's driving aggravating—a circumstance which Coleman does not challenge. Weaving in and out of traffic while driving 130 miles per hour is properly considered a circumstance in aggravation. (See *People v. Von Staden* (1987) 195 Cal.App.3d 1423, 1428 ["one who drives with a very high level of intoxication is indeed more negligent, more dangerous, and thus more culpable than one who drives near the legal limit of intoxication, just as one who exceeds the speed limit by 50 miles per hour exhibits greater negligence than one who exceeds the speed limit by 5 miles per hour"].)

Given the court's emphasis on these additional aggravating facts, we conclude its reliance on great bodily harm as an aggravating factor was not determinative, and there is not a reasonable probability that upon remand the trial court would impose the lower

term.  (*Avalos*, *supra*, 37 Cal.3d at p. 233.)  We therefore find the court's error in relying on great bodily harm as an aggravating factor to be harmless and conclude the court properly sentenced Coleman to the presumptive middle term under section 1170, subdivision (b)(1).

2.  *The Court's Minutes Reflect the Correct Amount of Presentence Credits*

At the sentencing hearing, the court awarded Coleman 232 days of presentence credit under section 4019, based on 119 actual days and 118 conduct days.  The minute order for the sentencing hearing, however, reflects that the court awarded 236 days of presentence credits, based on 118 actual days and 118 conduct days.

Coleman contends the court miscalculated the credits at the sentencing hearing and requests the minute order be corrected to reflect an award of 237 days.

The People agree the court miscalculated the credits when it orally imposed sentence, but contend the minute order does not need to be corrected because it reflects the correct amount of credits—236 days, based on 118 actual days and 118 conduct days. In support, the People cited the probation officer's report which states Coleman was in custody for 118 days.

Coleman conceded in the reply brief that "the credits should be 118 actual days, plus 118 days of good time/work time, for a total of 236 days." However, he went on to argue that "correction is still needed."

Conflicts between the oral pronouncement of judgment and the minute order are generally resolved in favor of the oral pronouncement.  (*People v. Gonzalez* (2012) 210 Cal.App.4th 724, 744.)  However, in certain circumstances, the reviewing court will

17

deem the minute order to prevail over the reporter's transcript. (*People v. Cleveland* (2004) 32 Cal.4th 704, 768 (*Cleveland*); *People v. Thompson* (2009) 180 Cal.App.4th 974, 978 (*Thompson*).) When the record is in conflict and cannot be harmonized, "'that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence.'" (*People v. Smith* (1983) 33 Cal.3d 596, 599.) Whether the minute order will be deemed to prevail against contrary statements in the reporter's transcript will depend upon the circumstances of the case. (*Ibid*.)

Here, the trial court incorrectly calculated the presentence credit award in its oral pronouncement of judgment. It then issued a minute order that both parties agree accurately reflects the amount of presentence credits to which Coleman is entitled. Under these circumstances, we deem the minute order to prevail over the reporter's transcript and conclude the erroneous statements in the reporter's transcript are of no effect. (*Cleveland*, *supra*, 32 Cal.4th at p. 768; *Thompson*, *supra*, 180 Cal.App.4th at p. 978.) No further correction of the record needs to be made.

3. *The Court's Minutes Incorrectly Reflect the Sentence Imposed*

Finally, the parties agree the minute order for the sentencing hearing should be corrected to reflect that the court imposed the middle term of two years for Coleman's conviction of vehicular manslaughter while intoxicated.

The minute order incorrectly states the court imposed the "[u]pper term" of two years. As noted, the punishment for vehicular manslaughter while intoxicated is 16 months, two years, or four years. (§ 191.5, subd. (c)(2).)

An appellate court has the authority to correct clerical errors in a minute order to ensure that the record is accurate. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385-386; *People v. Gonzalez* (2012) 210 Cal.App.4th 724, 744.) Accordingly, we will direct the trial court to prepare an amended minute order that reflects Coleman was sentenced to the middle term of two years for vehicular manslaughter while intoxicated.

## DISPOSITION

The trial court is directed to amend the October 13, 2023 minute order to reflect that it imposed the middle term of two years for Coleman's conviction of vehicular manslaughter while intoxicated. In all other respects the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

MILLER
J.
FIELDS
J.

19