Filed 12/23/25  P. v. Ly CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ALEXANDER TOUA LY,<br><br>Defendant and Appellant. | F087506<br><br>(Super. Ct. No. F19901336)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Alexander Toua Ly was convicted of various sex crimes involving a minor and related offenses.  On appeal, defendant contends the trial court erred by (1) denying his posttrial request to represent himself at sentencing pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) and (2) failing to stay two counts under Penal Code section 654.[1]  We affirm.

## PROCEDURAL SUMMARY

A second amended information filed by the District Attorney of Fresno County charged defendant with four counts of sexual intercourse with a child 10 years of age or younger (§ 288.7, subd. (a); counts 1–4), four counts of oral copulation with a child 10 years of age or younger (§ 288.7, subd. (b); counts 5–8), four counts of committing a lewd act on a child (§ 288, subd. (a); counts 9–12), continuous sexual abuse of a child (§ 288.5, subd. (a); count 13), oral copulation of a person under the age of 14 (§ 287, subd. (c)(1); count 14), kidnapping for purposes of committing another crime (§ 209, subd. (b)(1); count 15), assault with a firearm (§ 245, subd. (a)(2); count 16), and possession of child pornography (§ 311.11, subd. (a); count 17).  The second amended information also alleged that defendant was armed with a weapon at the time of the commission of count 16 (California Rules of Court, rule 4.421(a)(2)),[2] the victims named in counts 1 through 16 were particularly vulnerable (rule 4.421(a)(3)), and defendant took advantage of a position of trust or confidence to commit the offenses alleged in counts 1 through 15 (rule 4.421(a)(11)).

On December 18, 2023, the jury found defendant guilty on all counts.  After defendant waived his right to a jury trial on the circumstances in aggravation, and following a bifurcated proceeding, the trial court found true the aggravating factors that the victims named in counts 1 through 16 were particularly vulnerable (rule 4.421(a)(3))

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     All further rule references are to the California Rules of Court.

and defendant took advantage of a position of trust or confidence to commit the offenses alleged in counts 1 through 15 (rule 4.421(a)(11)). The court found not true the aggravating factor that defendant was armed with a weapon at the time of the commission of count 16 (rule 4.421(a)(2)).

On January 19, 2024, the trial court imposed four consecutive terms of 25 years to life on counts 1 through 4 and four consecutive terms of 15 years to life on counts 5 through 8. The court also imposed a term of life with the possibility of parole on count 15. The court further sentenced defendant to a consecutive determinate term of 25 years as follows: 16 years on count 13; two years each on counts 9 through 12; and one year on count 16. The court imposed a concurrent term of two years on count 17. The court imposed but stayed the sentence on count 14 under section 654.

Defendant filed a timely notice of appeal on January 22, 2024.

## **FACTUAL SUMMARY**[3]

### *Background*

K.L. lived in a home with her mother, father, and some of her siblings, including her sister, J.L. Defendant, who is K.L.'s and J.L.'s uncle, often visited the home to bring food when the mother and father were not home.

K.L. testified defendant began sexually touching her when she was nine years old, and he continued to do so until she was 13 years old. Over the roughly four-year period, defendant engaged in sexual acts on her at least five times per month. Defendant typically removed her clothes and rubbed his penis against her vagina. Other incidents included defendant touching her breast and vagina with his hand or mouth, as well as vaginal intercourse. These incidents usually took place in defendant's apartment but sometimes occurred in a motel instead. Defendant gave her a phone to watch videos or

---

**3**  We only provide a factual summary relevant to the legal issues in this appeal.

play games to distract her attention during the incidents.  Defendant also recorded and took pictures of her during or after the incidents.

### September 5, 2015, and November 7, 2015

Defendant recorded one video on September 5, 2015, which showed K.L. lying on her back and holding a tablet or a phone.  K.L. was 10 years old at the time.  Her shirt was "pushed up," and she was nude from below the upper chest.  Defendant orally copulated K.L.'s vagina in the video.  The video served as the basis for count 5.  On the same day, defendant also took a picture which showed his penis penetrating K.L.'s vagina.  The picture served as the basis for count 1.

Defendant also recorded a video on November 7, 2015.  That video showed defendant's hand touching K.L.'s vagina before he orally copulated her.  The video served as the basis for count 6.  On the same day, defendant also took a picture of K.L.'s pubic area with her legs spread.  The picture showed defendant's penis touching, but not penetrating, her vagina.  The picture served as the basis for count 12.

### Law Enforcement Investigation

Law enforcement began its investigation around January 2019.  On February 11, 2019, K.L. was interviewed by Detective Nelly Rodriguez of the Fresno Police Department.  Rodriguez noted in the police report:  "[K.L.] stated [defendant] would usually video record the sexual assaults with a black camera with an adjustable lens and a tripod stand."

On February 20, 2019, Rodriguez obtained a warrant to search defendant's apartment and the motel.  The "Statement of Probable Cause" in the affidavit in support of the search warrant stated:  "[K.L.] stated [defendant] would usually record the sexual assaults with a black camera with an adjustable lens and a tripod stand."

On February 21, 2019, law enforcement searched defendant's apartment and found a black external hard drive containing several pictures and videos of K.L., including those taken on September 5, 2015, and November 7, 2015.  The search of his apartment also

4.

produced a nine-millimeter handgun, a backpack, a gun case, a BB gun, and a "tripod box" for a camera. Law enforcement searched the motel the following day and obtained surveillance footage of defendant on the premises, as well as a receipt for a room under defendant's name.

### Custodial Interrogation

On February 21, 2021, the same day as the search of defendant's apartment, law enforcement interviewed defendant for approximately two and a half hours. Defendant was read his *Miranda*[4] rights. During the interview, defendant admitted he engaged in sexual acts with K.L., including rubbing his penis on her vagina, orally copulating her vagina, and penetrating her vagina with his penis. During these acts, defendant usually "started" with oral copulation. When asked if there was a reason for doing so, defendant stated:

> "In the acts of, uh, performing sex, any, any couple would want to start with oral cop [*sic*] to, um, help loosen the muscles. … A couple would start with oral cop so it helps relieve … muscle tension and all that, or so I've, so I've learned. [¶] … [¶] … Because … if a man penetrates a, a woman with all the, you know—Let's say a man doesn't, yeah, he just goes straight to penetration, the woman doesn't warm up or she doesn't, you know, she's not ready for it. It's going to be unpleasant for the woman. [¶] … [¶] … And, it would feel uncomfortable and maybe even painful."

## DISCUSSION

### I. *Faretta* Request

Defendant contends the trial court prejudicially erred by denying his posttrial request to represent himself pursuant to *Faretta, supra*, 422 U.S. 806. The People contend the court acted within its discretion by denying his untimely *Faretta* request and any assumed error was harmless. We agree with the People on both contentions.

---

[4]     *Miranda v. Arizona* (1966) 384 U.S. 436.

### A. Additional Information

In January 2021, defendant made an oral motion to represent himself and filled out an advisement and waiver of right to counsel form (*Faretta* waiver). The trial court granted his motion. In November 2021, defendant requested the court to reappoint the public defender to represent him, and the court did so.

Before trial, defense counsel filed a motion to quash the search warrant executed on defendant's apartment and the motel. The motion asserted the affidavit for the search warrant contained the false statement: "[K.L.] stated [defendant] would usually record the sexual assaults with a black camera with an adjustable lens and tripod stand." According to defense counsel, K.L. did not state in her recorded interviews with law enforcement that defendant videotaped sexual assaults with a black camera. The motion also asserted the warrant was deficient because law enforcement failed to give defendant a receipt after the seizure of his property, the seized property was not described in the warrant, and the warrant was returned and filed two years later, on April 1, 2021, in excess of the 10-day requirement in section 1534, subdivision (a). The motion requested to suppress evidence obtained in connection to the searches, including the hard drive, the motel's surveillance footage, and defendant's statements made during the custodial interrogation.

The trial court held a hearing on the motion on December 5, 2023. The court allowed for witness testimony at the hearing to provide defendant "an opportunity to learn where this information contained in the crime report but not in the recorded statements of [K.L.] … originated." Regarding the statement in the search warrant, Rodriguez testified she remembered K.L. telling her on February 11, 2019, that defendant recorded the sexual assaults with a black camera. As to why the statement was not in the recorded interview, Rodriguez stated:

> "It could very well have been like a follow-up question I asked [K.L.] afterwards. I spoke to her two times, and then in the meantime there were

6.

also other things that were occurring related to the investigation such as a pretext call that we did and [she] was also there in the home. There was also the photo identification that we did with her and she was still [] obviously we're still in the home. So I honestly believe that it was a question I had asked her once that portion of the recording had turned off because I was still in the home conducting investigation on this."

The trial court denied the motion following the hearing. In doing so, the court noted Rodriguez's testimony "made it clear" that the contested statement in the search warrant originated from one of the instances in which she spoke with K.L. Based on the witness's testimony, the court determined that defendant did not meet his burden of proving by a preponderance of the evidence that the statement contained in the affidavit was false.

Defendant's jury trial started later that week. The jury returned its verdict of guilty on all counts on December 18, 2023. The trial court set the sentencing hearing for January 19, 2024.

On January 9, 2024, prior to the sentencing hearing, defendant filed a motion titled: "Notice of Motion to Modify/Amend : Motion to Suppress Evidence and Quash Warrant : Pursuant to Civil Procedure Section 1008." (Some capitalization omitted.) As relevant here, the heading of the motion stated, "Defendant in Propria Persona." His motion requested that the trial court quash the search warrant. He raised several arguments, including that the affidavit to the search warrant contained false statements, law enforcement seized property outside the scope of the warrant, the return of the warrant was dated over two years after the search, the asserted unlawfully-seized evidence was used to obtain a confession, the warrant itself was altered after the search was conducted, and there were discrepancies of facts bearing on Rodriguez's credibility. Attached to his motion was a declaration in which he asserted he had provided "new and different facts, circumstances, and case law" for the trial court to modify or amend its ruling on December 5, 2023.

At the sentencing hearing, defense counsel stated:

7.

"The defense at this point is not ready. I haven't spoken to my client since the day of the verdict. I did see a document that he mailed to the Court and it was listed in Odyssey, and there's a filed date on it. In my view of this document, this is the same, or quite similar issue that was litigated in limine on the jury trial. I'm not going to make this motion that was mailed to the Court because I've already litigated it. I'm letting [defendant] know this and I'm talking to him about it now.

"And I did notice only just now that on the top of the document [defendant] wrote defendant in pro per. [Defendant] is telling me now that he wants to go pro per on this matter, well, on this case. He has been pro per previously, so he has some familiarity with it."

The trial court asked defendant if his request was to proceed in propria persona, to which defendant responded affirmatively. Defendant stated he had completed the *Faretta* waiver in January 2021. The court recessed so defendant could complete the form waiver again.

After the recess, defendant informed the court that he completed the *Faretta* waiver. The following discussion then occurred:

"[Trial Court]: … So [defendant], you said you had, apparently you had been granted *Faretta* status. And when was that and what I mean by *Faretta* status, you were allowed to represent yourself. When was that?

"[Defendant]: January of 2021.

"[Trial Court]: And how long were you acting as your own attorney?

"[Defendant]: Until November 4th, 2021.

"[Trial Court]: So why were you relieved of your self-representation status?

"[Defendant]: I lawyered back up on that date.

"[Trial Court]: Why?

"[Defendant]: Because I felt pressure to going to trial soon or early at that time by the People.

"[Trial Court]: In 2021?

8.

"[Defendant]: Yes.

"[Trial Court]: And this case was about 30 days ago that it concluded?

"[Defendant]: Yes.

"[Trial Court]: So did you read this petition to proceed as your own attorney.

"[Defendant]: Yes, I have, Your Honor.

"[¶] … [¶]

"[Trial Court]: I can tell you, [defendant], one of my concerns, you've already had *Faretta* status and apparently you voluntarily terminated that status and that was quite sometime [*sic*] ago. You were represented by counsel since apparently November, 2021, up to and through your trial in which you were convicted, and now at sentencing you're requesting to represent yourself again.

"[Defendant]: That's correct, Your Honor.

"[Trial Court]: I'm concerned about the timeliness of the request and, again, the fact that it's a second request after a prior voluntary termination. [¶] The issues the Court sees is the timeliness of the request here. The requirement that a *Faretta* motion be made timely is so that the motion is not used to obstruct justice and simply as a delay tactic. Given that this case has already been tried, that it is at the time that the case was set for sentencing, after appointed counsel indicated that he was not prepared to argue the motion that the defendant prepared on his own and submitted to the Court in pro per, as if he were not represented by counsel, and for that reason, it is not properly before the Court." (Italics added.)

The trial court denied defendant's request after determining it was "untimely and simply intended as a basis for delay."

Turning to defendant's self-filed motion, the trial court noted the motion was not properly before the court unless his counsel made the motion.[5] Defense counsel summarized defendant's declaration in the motion, stating that there were false

---

[5]    The court noted there was an exception for *Marsden* motions (*People v. Marsden* (1970) 2 Cal.3d 118). Defendant confirmed that he was not requesting a *Marsden* hearing.

statements in the police report and differences in the judge's signature for the arrest warrant. Defense counsel also noted the motion was made under Code of Civil Procedure section 1008.

The trial court observed Code of Civil Procedure section 1008 concerns motions for reconsideration but does not apply to criminal proceedings. The court recognized that judges in criminal proceedings retain the inherent authority to reconsider matters based upon new evidence but stated there was "absolutely no reason for the Court to reconsider" its prior ruling. The court noted that it was satisfied with its prior ruling because there was "no evidence of any intentionally false statement made in the affidavit in support of the search warrant." The court denied defendant's motion.

The trial court then proceeded to sentencing. The court stated it had read and considered the probation report. The probation report listed two factors in aggravation and the following factor in mitigation relating to defendant: "The defendant has no prior record, or an insignificant record of criminal conduct, considering the recency and frequency of prior crimes." As to sentencing, defense counsel did not provide further argument to the court.

### B. Standard of Review

"A defendant in a criminal case has a constitutionally guaranteed right of self-representation." (*People v. Jones* (1991) 53 Cal.3d 1115, 1141.) In order to invoke the right, "he must assert it within a reasonable time before the commencement of trial." (*People v. Marshall* (1996) 13 Cal.4th 799, 827.) "Much as a request to represent oneself at trial must be made a reasonable time before trial commences, the request for self-representation at sentencing must be made within a reasonable time prior to commencement of the sentencing hearing." (*People v. Miller* (2007) 153 Cal.App.4th 1015, 1024 (*Miller*).) A motion made after a reasonable time "is addressed to the sound discretion of the trial court, which should consider such factors as the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the

10.

reasons for the request, the length and stage of the proceedings, and the disruption or delay that might reasonably be expected to follow the granting of such a motion." (*Marshall*, at p. 827.)

The erroneous denial of an untimely *Faretta* request is reviewed for harmless error under a state law standard. (See *People v. Rogers* (1995) 37 Cal.App.4th 1053, 1058; *People v. Watson* (1956) 46 Cal.2d 818, 836–837 (*Watson*) [reversal required when the court determines it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error].)

### C. Analysis

Defendant first argues his posttrial *Faretta* request was timely.

For a *Faretta* request to be timely, it must be made within "a reasonable time prior to commencement of the sentencing hearing." (*Miller, supra*, 153 Cal.App.4th at p. 1024.) "The timeliness requirement 'serves to prevent a defendant from misusing the motion to delay unjustifiably the trial or to obstruct the orderly administration of justice.'" (*People v. Doolin* (2009) 45 Cal.4th 390, 454.) In *People v. Windham* (1977) 19 Cal.3d 121 (*Windham*), our Supreme Court cautioned the " 'reasonable time' requirement should not be and, indeed, must not be used as a means of limiting a defendant's *constitutional* right of self-representation." (*Id.* at p. 128, fn. 5.) The court further stated:

> "We intend only that a defendant should not be allowed to misuse the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice. For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request. In such a case the motion for self-representation is addressed to the sound discretion of the trial court which should consider relevant factors such as whether or not defense counsel has himself indicated that he is not ready for trial and needs further time for preparation." (*Windham, supra*, 19 Cal.3d at p. 128, fn. 5.)

11.

The *Windham* court also noted: "There may be other situations in which a request for self-representation in close proximity to trial can be justified. When the lateness of the request and even the necessity of a continuance can be reasonably justified the request should be granted." (*Windham, supra*, 19 Cal.3d at p. 128, fn. 5.) "When, on the other hand, a defendant merely seeks to delay the orderly processes of justice, a trial court is not required to grant a request for self-representation without any ability to test the request by a reasonable standard." (*Ibid.*)

Here, defendant made his *Faretta* request at his sentencing hearing. At the hearing, defense counsel noted defendant's self-filed motion was "the same" or "quite similar" to the issue that was litigated during the motions in limine, and as a result, counsel stated he was "not going to make this motion" because he had "already litigated it."[6] The record shows that after defense counsel indicated he was not going to advance the reconsideration motion, defendant informed his counsel that he wanted "to go pro per on this matter, well, on this case." We hold defendant's *Faretta* request was untimely.

Defendant argues his reconsideration motion, which was received by the court 10 days prior to the sentencing hearing, served as an implicit notification to the court of his *Faretta* request. Defendant's argument misses the mark. An implicit notification of the request is insufficient for *Faretta* purposes. (See *People v. Doolin, supra*, 45 Cal.4th at p. 453 ["whether timely or untimely, a request for self-representation must be unequivocal"]; *People v. Dent* (2003) 30 Cal.4th 213, 218 ["Unlike the right to representation by counsel, ' "[t]he right of self-representation is waived unless defendants articulately and unmistakably demand to proceed *pro se*." ' "].) Defendant's reconsideration motion, which only noted in the heading, "Defendant in propria persona," was not a clear and unmistakable demand for the trial court to release defense counsel

---

**6**     For ease of reference, we refer to defendant's self-filed motion as the "reconsideration motion."

from representation and for defendant to represent himself moving forward. The court could have reasonably interpreted this notation to mean defendant only intended to file that reconsideration motion on his own while otherwise retaining defense counsel for future hearings, including the sentencing hearing. (See *People v. Marshall* (1997) 15 Cal.4th 1, 23 ["the court should draw every reasonable inference against waiver of the right to counsel"].)

Relying on *People v. Herrera* (1980) 104 Cal.App.3d 167 (*Herrera*) and *People v. White* (1992) 9 Cal.App.4th 1062, defendant appears to suggest his request at the sentencing hearing was timely because it was his earliest opportunity to make the request and to communicate with his counsel. As we will explain, we are not persuaded.

In *Herrera*, the defendant requested to represent himself immediately after the trial court denied his motion to enter a plea of not guilty by reason of insanity. (*Herrera, supra*, 104 Cal.App.3d at p. 174.) The trial court denied his request. (*Ibid.*) The Court of Appeal determined the trial court erred by denying his request because the court made "no attempt to comply" with the factors illustrated in *Windham*. (*Ibid.*) The *Herrera* court noted one factor from *Windham* was the cause for the lateness of the request. (*Ibid.*, citing *Windham, supra*, 19 Cal.3d at p. 128, fn. 5.) Regarding that factor, the *Herrera* court observed the defendant's request was made immediately after the trial court denied his request to enter a plea of not guilty by reason of insanity and noted, "To hold a motion for self-representation made by a defendant at his earliest opportunity is untimely when that 'earliest opportunity' appears to be shortly before trial, would effectively thwart defendant's constitutional right to proceed in propria persona as established in [*Faretta*]." (*Herrera*, at p. 174.) The Court of Appeal in *People v. White* noted, "[E]ven a *Faretta* motion made on the day of trial is not untimely per se." (*People v. White, supra*, 9 Cal.App.4th at pp. 1072–1073, citing *Herrera*, at p. 174.)

Here, by contrast, defendant made his *Faretta* request at the sentencing hearing after defense counsel indicated he would not advance defendant's self-filed motion for

13.

reconsideration of the trial court's ruling on the motion to suppress over one month prior. Although defendant's argument for timeliness of the *Faretta* request largely rests on the court's adjudication of the reconsideration motion, defendant provides no explanation for why his reconsideration motion was filed over one month after the original ruling and several weeks after the jury returned a verdict of guilty. Considering the delay in filing his reconsideration motion, the record does not support the notion that defendant made his *Faretta* request at the earliest opportunity. (See *Miller, supra*, 153 Cal.App.4th at p. 1024 ["the request for self-representation at sentencing must be made within a reasonable time prior to commencement of the sentencing hearing"].)

Defendant alternatively argues the trial court abused its discretion by denying his *Faretta* request on grounds not supported by the record. We disagree. The court first inquired into defendant's prior self-representation and his decision to terminate that self-representation. The court then stated it was concerned with defendant's *Faretta* request at sentencing given his prior self-representation or *Faretta* status and voluntary termination of that status. As the court noted, defendant previously had been allowed to represent himself for about 10 months before he requested for the court to reappoint counsel in November 2021. Defendant retained that counsel through his jury trial in December 2023. The court thus explicitly considered several relevant factors in denying defendant's *Faretta* request. (See *People v. Marshall, supra*, 13 Cal.4th at p. 827 [relevant factors include the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay that might reasonably be expected to follow the granting of such a motion].) While the court did not expressly consider all the relevant factors from *Windham*, we note the court was not required to go through each and every factor. (See *Windham, supra*, 19 Cal.3d at p. 129, fn. 6 ["We decline to mandate a rule that a trial court must, in all cases, state the reasons underlying a decision to deny a motion for self-representation which is based on

14.

nonconstitutional grounds."].)  The court did not abuse its discretion in denying defendant's *Faretta* request.

But even assuming the trial court erred by denying defendant's *Faretta* request, we further conclude any error was harmless under *Watson*.  (See *People v. Rogers, supra*, 37 Cal.App.4th at p. 1058; *People v. Rivers* (1993) 20 Cal.App.4th 1040, 1050.)

Defendant first argues the trial court's subsequent actions during sentencing support a showing of prejudice from the assertedly erroneous denial of his *Faretta* request.  In doing so, defendant notes his counsel did not submit a sentencing brief or advance an argument at the sentencing hearing.  Defendant asserts he could have raised several arguments at sentencing, including for the court to stay either count 1 or 5 and either count 6 or 12 under section 654, or impose concurrent rather than consecutive terms for those counts and/or other counts.  Additionally, defendant claims he could have informed the court of additional factors in mitigation which could have reduced his overall sentence.  He further suggests he could have objected to his 185-year-to-life term as cruel and/or unusual under the state or federal Constitution.

Defendant's arguments are unavailing.  The prejudice analysis concerns whether there was a reasonable probability of a different outcome if the trial court had not committed the asserted error.  (See *Watson, supra*, 46 Cal.2d at pp. 836–837.)  The underlying asserted error here is the denial of his *Faretta* request.  It is clear from the record defendant made his *Faretta* request for the court to rule on his reconsideration motion, but defendant's reconsideration motion did not address any sentencing considerations.  Nothing in the record suggests defendant would have made those arguments pertaining to his sentencing had his *Faretta* request been granted.  It would be entirely speculative to conclude that, had the court granted his *Faretta* request, defendant would have advanced these arguments relating to sentencing and that those arguments would have been successful in lowering his sentence.

Next, defendant claims the denial of his *Faretta* request prevented a complete review of his reconsideration motion.  Not so.  As defendant acknowledges, the relitigation of a motion to suppress evidence is limited by section 1538.5, subdivision (j).  " 'As a general rule, a defendant is allowed only one pretrial suppression motion under section 1538.5 in the superior court, and that court is without jurisdiction to hear a second motion.' " (*People v. Arebalos-Cabrera* (2018) 27 Cal.App.5th 179, 191; accord, *Madril v. Superior Court* (1975) 15 Cal.3d 73, 77–78.)  "To allow a reopening of the question on the basis of new legal theories to support or contest the admissibility of the evidence would defeat the purpose of Penal Code section 1538.5 and discourage parties from presenting all arguments relative to the question when the issue of admissibility of evidence is initially raised." (*Lorenzana v. Superior Court* (1973) 9 Cal.3d 626, 640.)  There is "an exception to this general rule where a defendant has not had a full and fair opportunity to litigate his motion to suppress." (*Arebalos-Cabrera*, at pp. 191–192, citing *People v. Brooks* (1980) 26 Cal.3d 471.)

This exception does not apply to this record.  At the pretrial hearing on December 5, 2023, the trial court received witness testimony before denying defendant's motion to suppress.  Defendant does not attempt to explain how he was deprived of a full and fair opportunity to litigate his motion to suppress at the hearing on December 5, 2023.  Instead, defendant appears to suggest he was denied a fair opportunity to argue his reconsideration motion.  But this exception considers the proceedings of the initial motion to suppress, not the second.  (See *People v. Arebalos-Cabrera, supra*, 27 Cal.App.5th at p. 192 [noting the defendant was not entitled to a second suppression hearing since the trial court did not deprive him of the opportunity for a full hearing on the motion].)  On this record, the trial court did not have jurisdiction to consider defendant's reconsideration motion.  Defendant fails to show a reasonable probability of a result more favorable to him if his *Faretta* request had been granted.

In sum, the trial court did not err in denying defendant's untimely *Faretta* request, but even assuming error, there was no reasonable probability of an outcome more favorable to defendant absent the error.

## II.  Section 654

Defendant contends the trial court violated section 654's proscription against multiple punishments when it failed to stay terms on counts 1 or 5 and 6 or 12.  The People contend the court did not err because the acts were separately punishable.  We agree with the People.

Section 654, subdivision (a) provides:  "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

" 'The trial court has broad latitude in determining whether section 654, subdivision (a) applies in a given case.' " (*People v. Vasquez* (2020) 44 Cal.App.5th 732, 737.)  "In analyzing whether section 654 bars the imposition of multiple sentences, we consider the evidence in the light most favorable to the judgment and affirm the trial court's sentencing decision—whether express or implied—if it is supported by substantial evidence." (*Ibid.*; see also *People v. Osband* (1996) 13 Cal.4th 622, 730 [trial court's imposition of consecutive sentences was an implicit finding that the crimes involved more than one objective].)

As stated above, the second amended information alleged defendant committed two offenses on September 5, 2015:  count 1, sexual intercourse with a child 10 years of age or younger (§ 288.7, subd. (a)); and count 5, oral copulation with a child 10 years of age or younger (§ 288.7, subd. (b)).  The second amended information also alleged defendant committed two offenses on the date of November 7, 2015:  count 6, oral copulation with a child 10 years of age or younger (§ 288.7, subd. (b)); and count 12,

lewd act upon a child (§ 288, subd. (a)).  The lewd act described in count 12 was defendant touching K.L.'s vagina with his penis.

Defendant argues the trial court was required to stay one of the two counts as to the incident on September 5, 2015, (counts 1 & 5) and one of the two counts as to the incident on November 7, 2015, (counts 6 & 12) under section 654.

Section 654 "applies when there is a course of conduct which violates more than one statute but constitutes an indivisible transaction."  (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.)  But "[e]ven where the defendant has but one objective—sexual gratification—section 654 will not apply unless the crimes were either incidental to or the means by which another crime was accomplished."  (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1006 (*Alvarez*).)  "A defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act."  (*People v. Perez* (1979) 23 Cal.3d 545, 553.)  "[M]ultiple sex acts committed on a single occasion can result in multiple statutory violations.  Such offenses are generally 'divisible' from one another under section 654, and separate punishment is usually allowed."  (*People v. Scott* (1994) 9 Cal.4th 331, 344, fn. 6.)

Defendant claims the two incidents of oral copulation of K.L. on September 5, 2015, and November 7, 2015, were committed to facilitate the subsequent intercourse and lewd act on those days.  Thus, according to defendant, the trial court was required to stay under section 654 either count 1 or 5 and either count 6 or 12.

In making this argument, defendant relies solely on his statements to law enforcement from his custodial interrogation.  But his statements to law enforcement instead refute his claim.  He told law enforcement the importance of performing oral copulation was to "loosen the muscles" and relieve "muscle tension."  He further explained that if a man "just goes straight to penetration, [and] the woman doesn't warm up or she doesn't, you know, she's not ready for it," then "[i]t's going to be unpleasant

18.

for the woman." Defendant's statements suggest his acts of oral copulation were designed to sexually arouse K.L. Such preparatory acts are not subject to section 654. (*Alvarez, supra*, 178 Cal.App.4th at p. 1006 ["section 654 does not apply to sexual misconduct that is 'preparatory' in the general sense that it is designed to sexually arouse the perpetrator or the victim"]; accord, *People v. Jacobo* (2019) 37 Cal.App.5th 32, 53.)

To the extent defendant suggests his acts of oral copulation in counts 5 and 6 were "incidental" to his subsequent sexual acts in counts 1 and 12, we disagree. Although defendant orally copulated K.L. before committing the intercourse and lewd act on September 5 and November 7, 2015, respectively, it cannot be said that the acts of oral copulation were merely incidental to the sexual acts. Oral copulation is a separate and distinct sexual act much unlike removing a victim's clothing or applying lubricant to an area. (See *People v. Greer* (1947) 30 Cal.2d 589, 604 [removal of victim's underclothing immediately preceding rape did not warrant separate punishment], overruled on another ground by *People v. Fields* (1996) 13 Cal.4th 289, 308, fn. 6; *People v. Madera* (1991) 231 Cal.App.3d 845, 855 [noting section 654 would bar separate punishment for applying lubricant to the area to be copulated].) Orally copulating to, according to defendant, "loosen the muscles" and "warm up" the woman for penetration, is preparatory in the general sense. (See *People v. Hicks* (2017) 17 Cal.App.5th 496, 515 [furnishing drugs to arouse the victims was "preparatory" in nature and not subject to section 654]; see also *Alvarez, supra*, 178 Cal.App.4th at p. 1006 ["section 654 [is] of limited utility to defendants who commit multiple sex crimes against a single victim on a single occasion"].)

*People v. Latimer* (1993) 5 Cal.4th 1203, upon which defendant also relies, is inapposite. There, the defendant kidnapped his victim, drove her into the desert, and raped her. (*Id.* at pp. 1205–1206.) Regarding his convictions of kidnapping and raping the victim, the defendant received consecutive sentences. (*Id.* at p. 1206.) The California Supreme Court held section 654 barred sentence on the kidnapping conviction, noting the

evidence did not "suggest any intent or objective behind the kidnapping other than to facilitate the rapes." (*Latimer*, at p. 1216.)  Importantly, our high court reasoned the kidnapping was incidental to, and a means of, committing the rape.  (*Id.* at pp. 1205–1206, 1216.)  Here, by contrast, the two acts of oral copulation at issue were not incidental to the act of intercourse or lewd act upon a child.

The trial court was not required to stay defendant's sentences in the manner complained.

## **DISPOSITION**

The judgment is affirmed.

HILL, P. J.

WE CONCUR:

DETJEN, J.

SNAUFFER, J.

20.